Argued June 4, affirmed August 23, petition for rehearing
denied October 15, 1968

BRANNON, *Appellant, v.* WOOD ET AL,
*Respondents.*

444 P. 2d 558

*Gerald H. Robinson,* Portland, argued the cause for appellant. With him on the briefs were Lent, York & Paulson and Charles Paulson, Portland.

*Curtis W. Cutsforth,* Portland, argued the cause for respondent James A. Wood. With him on the brief were King, Miller, Anderson, Nash & Yerke, Portland.

*Bruce Spaulding,* Portland, argued the cause for respondent The Portland Clinic. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, DENECKE, HOLMAN, LUSK and RODMAN, Justices.

RODMAN, J. (Pro Tempore).

The plaintiff has appealed from an adverse judgment in a personal injury action. In 1964, he was admitted into St. Vincent Hospital for the purpose of having the defendant James A. Wood, a thoracic surgeon, remove a posterior mediastinal tumor from his chest. During the course of the operation it was determined that the tumor was a meningocele. A meningocele is a pouching out of a portion of the covering membrane (the dura) of the spinal cord so that the fluid around the spinal cord, which is held in by the dura, tends to force out the membrane in the same way that a weak spot in an inner tube is forced out in a bubble. The meningocele protruded through an opening (called a foramen) in the plaintiff's spinal column into his chest cavity. The tumor, which was about the size of a small lemon or large egg, was excised, the patient's chest closed and he was taken to the recovery room.

Several hours later it was noted that the plaintiff was hemorrhaging severly. He was returned to surgery and the incision reopened in order to locate the source of bleeding and stop it. Dr. Wood determined that the bleeding was coming up through the foramen from which the meningocele had been removed. In an attempt to stop the hemorrhaging, he

used silver Cushing clips to clamp off bleeding veins and applied Gelfoam over the source of the bleeding. Gelfoam is a type of gelatin which will facilitate clotting and is eventually absorbed by the body. When the Gelfoam was removed after a few minutes the bleeding began again at a rapid rate. He next inserted a sponge into the foramen with forceps, but this too was ineffectual. In the meantime, a blood transfusion had been commenced to offset a critical loss of blood.

When these measures failed, Dr. Wood packed Surgicel in through the foramen until the bleeding had stopped. Surgicel is a cellulose substance which is very hemostatic and similar in function to Gelfoam. It swells 10 to 20 per cent when exposed to liquids and will eventually dissolve in the body. After observing that the bleeding had stopped, the defendant Wood again closed the chest opening and returned the plaintiff to the recovery room.

In the recovery room it was discovered that the lower portion of Brannon's body was paralyzed. He was again returned to surgery and a neurosurgeon performed a laminectomy through the patient's back and removed the Surgicel. This failed to relieve the paralysis and the plaintiff remains a paraplegic with complete loss of feeling and motion from the umbilicus downward. There were other medical procedures involved in the case and the trial consisted largely of medical testimony; however, the statement above is sufficient to dispose of the issues that have been raised on appeal.

In his complaint the plaintiff set forth various specifications of negligence against the defendants. Before the case was submitted to the jury, the plain-

tiff withdrew all specifications of negligence except the following:

(1) In placing and leaving packing against plaintiff's spinal cord in such a position that it was likely to impinge upon plaintiff's spinal cord.

(2) In failing to warn plaintiff of the known and inherent risks, dangers and possible consequences of the planned surgical procedure, particularly the risk of massive hemorrhage, cord compression from hemorrhage, rupture of adjacent blood vessels, and spinal cord compression.

It was not disputed by the defendants that the plaintiff had suffered permanent paralysis and that it was caused by compression of the spinal cord by the Surgicel packed within the spinal canal. The defendants, other than Dr. Wood, were partners in The Portland Clinic. Dr. Wood was an associate of that firm and the only liability of the other defendants would arise from that relationship.

The case was submitted to the jury upon the two specifications of negligence set forth above, and the jury returned a verdict for the defendants.

Plaintiff's first assignment of error is that the court erred in failing to give a requested instruction on *res ipsa loquitur*.[1] The second assignment of error

---

[1] Plaintiff's requested instruction was as follows:

"You must decide the following questions concerning the injury involved in this case:

"Is it the kind of injury which ordinarily does not occur in the absence of negligence?

"Was the injury caused while the plaintiff was exclusively under the care or control of the defendants?

"The plaintiff is not required to identify the particular agency or instrumentality which caused the injury if he is unable to do so because of his physical condition at the time the operation was performed.

is related to the first; it is that the court erred in giving the usual instruction that the mere fact that an injury was sustained is not evidence of negligence, since, unless qualified, that would not be a correct statement of the law in a case involving the doctrine of *res ipsa loquitur*. The plaintiff does not contend that *res ipsa loquitur* applies to the specification of negligence charging the failure to warn the plaintiff of the risks and dangers of the surgery. Since the jury found against the plaintiff on that specification, we will not consider it further.

"Was the injury due to any voluntary action or contribution on the part of the plaintiff?

"If, and only if, you find that the plaintiff's injury was of a kind which ordinarily does not occur in the absence of negligence, was caused while the plaintiff was exclusively under the care or control of the defendants, and was not due to any voluntary action or contribution by the plaintiff, you are instructed as follows: From the happening of the accident involved in this case, you may reach the inference, if you desire, that a proximate cause of the occurrence was some negligent conduct on the part of the defendants. Such an inference is a form of evidence and unless there is contrary evidence sufficient to meet or balance it, the jury should find in accordance with the inference. When there is any evidence to the contrary, you must weigh all of the evidence bearing upon the issue of defendants' negligence. If the evidence tending to prove that the accident was caused by a failure of the defendants to exercise the care required of them has greater weight than the evidence to the contrary, you will find in favor of the plaintiff on that issue.

"In order to meet or balance the inference of negligence, the defendants must present evidence to show either: (1) A satisfactory explanation of the accident, that is, a definite cause for the accident, in which there is no negligence on the part of the defendants, or (2) Such care on the defendants' part as leads to the conclusion that the accident did not happen because of want of care by them, but was due to some other cause, although the exact cause may be unknown. If such evidence has at least as much convincing force as the inference and other evidence, if any, supporting the inference, then you would find against the plaintiff on that issue.

"BAJI, No. 214-W and 206 revised;

"*Mayor v. Dowsett*, 240 Or 196, 400 P2d 234."

The lower court did not err in refusing to give plaintiff's requested instruction on *res ipsa loquitur*. Likewise, there is no merit to the plaintiff's second assignment of error as the only fault claimed is that the instruction is inappropriate in a *res ipsa loquitur* case.

■ In *Mayor v. Dowsett*, 240 Or 196, 400 P2d 234 (1965), this court held that, subject to some limitations not of moment in this case, the doctrine of *res ipsa loquitur* may be applied in a medical malpractice case just as in any other negligence action. The elements which must be present in order for the doctrine to be available are:

> " '* * * (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. * * *' Prosser, Law of Torts (2d ed) 201-202, § 42." 240 Or at 214.

There is no question but that the plaintiff's injury was caused by an agency or instrumentality within the exclusive control of the defendants. The plaintiff alleged and proved that his paralysis was caused by the act of Dr. Wood placing Surgicel in such a position that it impinged upon his spinal cord. None of the seven doctors who testified for the defendants suggested that the injury was caused in any other way. The plaintiff was unconscious throughout the operation, and, of course, no action on his part contributed to the paralysis. If the jury could find that an accident of this kind does not ordinarily occur in the absence of negligence, then the case would fall within the doctrine of *res ipsa loquitur*.

Courts are not in agreement as to the effect on *res ipsa loquitur* of pleading specific allegations of negligence. 38 Am Jur, Negligence § 305 at 1001-1002, sets out the several rules:

"There is a sharp conflict of authority as to whether pleading a specific act of negligence waives the pleader's right to rely upon the doctrine of res ipsa loquitur. Some jurisdictions adopt the view that if the case is a proper one for the application of the doctrine, the plaintiff, by pleading the particular cause of the accident, in no wise loses his right to rely upon the doctrine, and any specific allegations of negligence in the complaint are wholly immaterial, provided, of course, the complaint otherwise contains a general allegation of negligence. Even if he fails to prove the specific allegations, the presumption is still available. On the other hand, there are cases which apparently go to the extent of holding that the plaintiff, by merely alleging specific acts of negligence, precludes any right whatever to rely upon the doctrine; at least the language used by the court seems to admit of no other interpretation. Another class of cases holds that where a plaintiff makes specific allegations of negligence, he must rely for his recovery upon such specific acts of negligence, and cannot recover for any other negligent acts; but he is not deprived of the benefit of the doctrine of res ipsa loquitur to establish his specific acts of negligence. In other words, by the mere allegation of a specific act of negligence, he is not deprived of the benefit of the doctrine so far as the specific act of negligence itself is concerned. The application of the doctrine is limited to the establishment of the particular acts of negligence alleged, just as any proof which the plaintiff might seek to introduce would be limited to the establishment of the negligence alleged    *    *    *."

■ This court has followed the rule stated last in the above text. *Boyd v. Portland Electric Co.,* 40 Or

126, 66 P 576, 57 LRA 619 (1902); *Boyd v. Portland Electric Co.*, 41 Or 336, 68 P 810 (1902); *Short v. D.R.B. Logging Co.*, 192 Or 383, 232 P2d 70, 235 P2d 340 (1951).

The application of this principle is illustrated in the second *Boyd* case wherein the plaintiff had been burned by an electrical wire of the defendant which had broken and fallen on the ground:

"* * * But if the plaintiff chooses to narrow and circumscribe his cause of action, and specify and particularize the cause of the parting of the wires, and its consequent suspension upon the street, he thereby limits the inquiry to the cause designated, and none other is pertinent or can be entertained at the trial; but this does not destroy the utility or applicability of the maxim *res ipsa loquitur,* if the facts proven speak of the negligence charged. It might be much restricted and limited in its utility, but it will speak none the less within the scope of the allegations of the complaint. Two of these specifications, in effect, are that the company negligently provided a frail, weak, and otherwise defective wire, and that it was improperly strung. Now, the fact that it broke or became severed was a physical fact, which would be presumptive of negligence in supplying a weak and defective wire, and it would also imply negligence in the proper stringing of the wire, and thus call upon the defendant to explain in these particulars, but as to none others outside of the scope of the pleadings. The fact that the pleadings are restrictive lessens the burden of the defendant, as it has notice of the particular matters of presumptive negligence, and as to this must explain, and thus rebut the inference * * *." 41 Or 344-345.

■ Applied to this case, *res ipsa loquitur* could only be used to give rise to an inference of negligence in connection with the first specification of negligence set forth above.

■ This brings us to a consideration of whether the accident in this case is of a kind which ordinarily does not occur in the absence of someone's negligence. The plaintiff in his brief argues that the proper question is: "Is paralysis of the lower body as a result of surgery to remove a tumor from the chest the kind of an accident which ordinarily does not occur in the absence of negligence?" We cannot agree. Because of the specific allegation of negligence and the supporting proof, the question is: "Is paralysis of the lower body resulting from packing Surgicel against the spinal cord in an attempt to halt extensive hemorrhaging an accident of the kind which ordinarily does not occur in the absence of someone's negligence?"

■ The test is not whether a particular injury rarely occurs, but rather, when it occurs, is it ordinarily the result of negligence. *Kaufman v. Fisher*, 230 Or 626, 371 P2d 948 (1962). Prosser, Torts 232, § 40 (3d ed 1955).

> "The fact that a particular injury suffered by a patient as the result of an operation is something that rarely occurs does not in itself prove that the injury was probably caused by the negligence of those in charge of the operation. [Citing cases.]

> "To permit an inference of negligence under the doctrine of res ipsa loquitur solely because an uncommon complication develops would place too great a burden upon the medical profession and might result in an undesirable limitation on the use of operations or new procedures involving an inherent risk of injury even when due care is used. Where risks are inherent in an operation and an injury of a type which is rare does occur, the doctrine should not be applicable unless it can be said that, in light of past experience, such an occurrence is more likely the result of negligence than some cause for which the defendant is not responsible."

*Siverson v. Weber,* 57 Cal2d 834, 22 Cal Rptr 337, 372 P2d 97 (1962).

■ We hold that it is not common knowledge that the result in this case does not ordinarily occur in the absence of negligence.

■ Perhaps a jury could find that the paralysis rarely follows from the medical procedures involved here, although it is more likely that they would have no knowledge about the matter. Certainly, laymen could not say that when paralysis does occur under the circumstances here present it is more likely than not the result of negligence. However, in answering this question, the jurors are not limited to their own knowledge as laymen, but are permitted to draw upon the testimony of experts. *Salgo v. Leland Stanford, Etc. Bd. Trustees,* 154 Cal App2d 560, 317 P2d 170 (1957); *Mayor v. Dowsett,* supra. As mentioned earlier, there was extensive medical testimony in this case. A number of doctors testified that the result here was very rare. Several doctors testified that generally it was bad medical practice to pack Surgicel into a foramen of the spinal column so tightly as to cause cord compression, and that it was generally bad practice to leave Surgicel in the body if it was tightly packed. However, the uncontradicted facts in this case show that the plaintiff was bleeding internally at such a rate that his life was in danger unless the bleeding could be stopped. Dr. Wood and Dr. Loosli, who assisted at the surgery, were aware of the risk of cord compression and used Surgicel as an emergency medical technique.

Dr. Wood testified:

"Q At the time you were engaged in your efforts to control the hemorrhage and at the time

that you used the Surgicel as you have described down through the foramen, were you aware or did you consider that this involved a risk of cord damage?

"A Yes, we certainly did.

"Q Would you tell us why you did that or why you adopted that particular procedure?

"A Well, I felt that I had tried all the things that I knew how to do to control this hemorrhage, and I had gone about it from the very simple things to the more complex things, and that it was in my opinion a life-threatening hemorrhage, and it was my belief that I had to stop this bleeding in the best possible way that I could, and I had tried the safer things, and although knowing some risk, I went ahead with the Surgicel.

"Q Did you believe at that time, Doctor, that this would probably cause injury to the cord?

"A No, I did not.

"Q But you were aware that it did involve some risk?

"A I certainly was."

And Dr. Loosli testified concerning the use of the Surgicel:

"Q (By Mr. Paulson). Did you express concern to anyone about the amount of pressure being applied at the time?

"A I can't recall. I'm sure that between Dr. Wood, myself, and the anesthesiologist, we were concerned about cord pressure. I don't think anyone would—could have handled this type of situation without having it in mind, but as far as any purposeful, direct conversation, I don't recall any."

■ There are risks inherent in the use of Surgicel against the spinal cord and, even though injury from this cause is rare, *res ipsa loquitur* is not applicable unless it can be shown through expert witnesses that

the injury is more likely the result of negligence than some other cause. *Siverson v. Weber*, supra. No doctor testified that under the facts of this case there was bad medical practice, and no doctor testified that where, under the present facts, injury does occur it is more likely than not the result of negligence. This case is to be distinguished from *Mayor v. Dowsett*, supra, where there was expert testimony that paralysis was not to be expected where due care was observed in the administration of the anesthetic. The trial court did not err in refusing to instruct the jury on *res ipsa loquitur*.

The defendants contend that even if an instruction on *res ipsa loquitur* should have been given in this case, the plaintiff's requested instruction was not a correct statement of the law. Since we find that no instruction on *res ipsa loquitur* should have been given, it is unnecessary to determine whether the proffered instruction in this case was a correct one.

The judgment is affirmed.