Argued July 14, 1970, reargued January 5, affirmed
January 13, 1971

DACUS, *Appellant, v.* MILLER, *Respondent.*

479 P2d 229

*George A. Haslett, Jr.*, Portland, argued the cause for appellant. With him on the brief was Robert J. Johnston.

*David C. Landis*, Portland, argued the cause for respondent. With him on the brief was Robert H. Hollister.

## McALLISTER, J.

Plaintiff sued the defendant surgeon for alleged malpractice in operating on her middle ear. The jury found for defendant and plaintiff appeals.

Only two of the several assignments of error need be mentioned. They involve the refusal of the court to give a res ipsa loquitur instruction and the

withdrawal from the jury's consideration of one of the specifications of negligence.

Defendant performed a radical mastoidectomy revision, during which he removed a mass of cholesteatoma. Defendant admits that during this surgery plaintiff's left facial nerve was injured, causing partial facial paralysis. He contends that injury to the facial nerve is one of the inherent risks of radical mastoid surgery and that the injury in this case was not caused by his negligence. The jury evidently so found.

In *Mayor v. Dowsett*, 240 Or 196, 214, 400 P2d 234 (1965) we said that the conditions necessary to the application of the principle of res ipsa loquitur are:

> " '* * * (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. * * *' Prosser, Law of Torts (2d ed) 201-202, § 42."

Elements number two and number three are obviously present in this case. Defendant admits that the nerve was injured while he was performing surgery and there is no question of participation by plaintiff. The only question is whether there is evidence from which the jury could find that condition number one was also present.

Two of plaintiff's expert witnesses testified that if due care were exercised in the performance of this operation, injury to the facial nerve would not "ordi-

narily" occur.[1] We think this testimony is adequate under the *Mayor* decision, where we held that plaintiff had made out a res ipsa case because there was expert testimony that "such an injury is not to be expected where due care is observed in the administration of the anesthetic." 240 Or at 217.[2]

---

[1] Dr. DeWeese, the ear surgeon who performed the corrective surgery on plaintiff's injured nerve, testified:

"Q  Now, Doctor, assuming that a surgeon performing a removal of cholesteatoma follows the ordinary standard of care in this community or a like community and follows the standard practices with that standard degree of care and—is it ordinarily expected an injury to the nerve will occur?

\* \* \* \* \*

"A  No, it isn't ordinarily expected."

Dr. Holden, also an ear specialist, testified:

"Q  If a surgeon exercises the degree of skill—degree of care and skill, degree of an ordinary surgeon in performance of this type of surgery, follows the procedures customary, does injury to the facial nerve ordinarily occur?

"A  Ordinarily, no."

[2] The expert testimony in *Mayor*, as quoted in the parties' briefs, is very similar to that in the present case. In *Mayor* the defendant doctor testified:

"Q  I take it, Doctor, that you and I can agree as a general proposition that one would not expect permanent partial paralysis from the neck down to result from the delivery of a second child following a spinal anesthetic when due care and proper practices are obtained?

"A  That is correct."

And plaintiff's expert witness testified:

"Q  Doctor, when due care and proper practices are followed, would permanent partial paralysis be expected to follow a spinal anesthetic and then childbirth?

"A  No, it wouldn't."

Because of the manner in which we dispose of this case, it is not necessary to consider whether *Mayor* applied the proper standard. Neither the testimony nor the standard applied in that case indicate that the injury was more probably than not the result of negligence. See, e.g., Brannon v. Wood, 251 Or 349, 360-361, 444 P2d 558 (1968). The same may be said of the expert testimony in this case. Nevertheless, we think the implication of the quoted testimony in both cases is the same—that the fact the injury occurred is an indication that due care was not employed.

It is also significant that, in spite of other expert testimony that injury to the facial nerve is an "inherent risk" in this type of surgery, the injury apparently occurs very rarely. A number of specialists testified to their experiences with similar operations; they reported very few cases in which injury to the nerve caused paralysis.[3]

■ Although we think that this was an appropriate case for a res ipsa loquitur instruction, and that the trial judge should have given a proper instruction if requested,[4] we find, nevertheless, that the instruction

---

[3] Four ear specialists, including defendant, testified to performing a combined total of about 2,200 middle ear surgeries. They reported five cases of temporary facial nerve injury resulting from bruising, heat caused by drilling, and postoperative swelling. Only one instance of direct injury to the facial nerve similar to that in the present case was mentioned by any of these witnesses; that injury was detected and repaired during surgery.

Dr. David DeWeese, head of the Department of Otolaryngology at the University of Oregon Medical School, testified that he had performed 1,500 to 2,000 middle ear surgeries; he was not asked how many of his own surgeries resulted in facial nerve injury. He testified that during his career he had performed about 35 operations to correct such injuries.

[4] In a line of cases beginning in 1950 we took the position that the trial court is not required to instruct on res ipsa, Ritchie v. Thomas et al, 190 Or 95, 224 P2d 543 (1950), but that such an instruction may be given, Powell v. Moore, 228 Or 255, 364 P2d 1094 (1961), and that it is "preferable" to instruct on the doctrine in a case in which it applies. Centennial Mills, Inc. v. Benson, 234 Or 512, 383 P2d 103 (1963). Without citing these cases, however, we said in Waterway Terminals v. P. S. Lord, 242 Or 1, 53, 406 P2d 556, 13 ALR3d 1 (1965), that in a res ipsa case an instruction on the doctrine should be given if requested.

It appears that the position taken in the *Waterway Terminals* case is in accord with the modern decisions in other states. See, e.g., Ryan v. George L. Lilley Co., 121 Conn 26, 183 A 2 (1936); Merriman v. Kraft, 242 NE2d 526 (Ind App 1968) (dictum); Vespe v. DiMarco, 43 NJ 430, 204 A2d 874 (1964); Tuso v. Markey, 61 NM 77, 294 P2d 1102 (1956); George Foltis, Inc. v. City of New York, 287 NY 108, 38 NE2d 455 (1941); Fink v. New York Cent. R. Co., 144 Ohio St 1, 56 NE2d 456 (1944); Turk v. H. C. Prange

requested by plaintiff was defective in form and, for that reason, should not have been given.

In this case the complaint in paragraph V charged the defendant with negligence in 13 particulars. In an apparent effort to invoke the res ipsa loquitur doctrine the complaint also charged the defendant in paragraph VI⑥ with negligence in general terms. The trial judge in preparing to submit the case to the jury struck eight of the specific charges of negligence and also struck paragraph VI in its entirety.

Plaintiff did not object when the court informed counsel that he was striking paragraph VI from the complaint and has not assigned that ruling as error in this court. We are dealing, therefore, with a complaint which, when the case was finally submitted to the jury, contained only allegations of specific negligence.

In *Brannon v. Wood*, 251 Or 349, 356-357, 444 P2d 558 (1968), this court held that where only specific acts of negligence are charged res ipsa loquitur can be used only to establish the particular negligent acts alleged. The court quoted the holding from *Boyd v. Portland Electric Company*, 41 Or 336, 68 P 810 (1902), so limiting the application of res ipsa loquitur.

The instruction requested by plaintiff in this case did not limit the jury to inferring negligence in

---

Co., 18 Wisc 2d 547, 119 NW2d 365 (1963); North Central Gas Company v. Bloem, 376 P2d 382 (Wyo 1962) (dictum). *Contra*, Chase v. Beard, 55 Wash 2d 58, 346 P2d 315 (1959).

⑥ "That under the procedures customarily followed for performance of a radical mastoidectomy revision for the removal of cholesteatoma, injury and paralysis to the facial nerve and interference with the balance and equalibrium [sic] will not occur ordinarily in the absence of negligence;".

the particulars alleged in the complaint. Instead, the instruction would have permitted the jury to infer that plaintiff's injury was caused by *"some* negligent conduct," *"some* negligent act," or *"some* instrumentality within the control of defendant."⑨ (Italics added.) The instruction would have permitted the jury to find the defendant negligent in some manner not alleged in the complaint and the court did not err in refusing to give it.

■ The jury in this case was given the customary instruction that the parties were limited to the contentions or claims alleged in their pleadings. The requested instruction was inconsistent with the instruction given and therefore the trial court could legitimately refuse to give the requested instruction for fear of confusing the jury. This does not mean necessarily that it would have been reversible error to give

---

⑨

"You may, however, find that there arises an inference that the proximate cause of the occurrence or accident was *some negligent conduct* on the part of defendant, if you find from the evidence the following things:

\* \* \* \* \*

"I instruct you that if you find by a preponderance of the evidence that the 'accident' complained of did occur and will not occur ordinarily when a surgeon has used the ordinary and standard degree of skill and care \* \* \* and you further find that the defendant was in exclusive control and without any voluntary action or contribution of the plaintiff, and that the injury was caused by *some instrumentality* within the control of defendant, then I instruct you are entitled to find an inference of negligence chargable [sic] to the defendant.

\* \* \* \* \*

"\* \* \* By giving the instruction it means only that under the facts and circumstances of this case, the plaintiff has presented sufficient evidence which, if believed by you, would justify reasonable minds to infer that *'some'* *negligent act* caused the injury or injuries during the surgery." (Italics added.)

the requested instruction. A trial court will be upheld in refusing to give a technically incorrect instruction even though, after mature consideration, an appellate court might conclude that the giving of the instruction would not have constituted reversible error.[⑦]

In *Waterway Terminals v. P. S. Lord,* 256 Or 361, 474 P2d 309, 313-314 (1970), we recently held that in a res ipsa case a plaintiff may allege negligence both generally and specifically. If he does so, he is entitled to a general application of the inference permitted by the doctrine. That holding cannot aid the plaintiff here. As we have pointed out, the allegation of negligence in general terms originally contained in the complaint was stricken at trial without objection and has not been assigned as error on appeal.

■ Plaintiff also assigns as error the withdrawal from consideration by the jury of her third specification of negligence, which read as follows:

"In operating, cutting, scraping, lifting, elevating, tearing, burring, and shaving the cholesteatoma matrix and tissue around, on and in the inner ear, and particularly at or near and too close to the course of the facial nerve and its canal, and in other than movements parallel to the facial nerve and its canal".

The only portion of this specification, if any, not included in the first specification of negligence is the phrase "in other than movements parallel to the facial nerve and its canal."

The trial judge apparently thought that the third specification of negligence was included in the compre-

---

[⑦] See Waterway Terminals v. P. S. Lord, 256 Or 361, 474 P2d 309, 313 (1970), and Sorenson v. Kribs, 82 Or 130, 145, 161 P 405 (1916) for discussions of the reasons applicable to each situation.

hensive language of the first specification, which read as follows:

"In failing to identify the course of the facial nerve in its course through the middle and inner left ear, and in proceeding to perform a radical mastoidectomy for removal of cholesteatoma with the knowledge that plaintiff had suffered from mastoiditis since infancy, that she had undergone mastoid surgery on two prior occasions, that she was chronically suffering from supperative otitis media, to detect the presence of chronic bone and tissue deterioration and changes, disorientation of organ structure, existence of improperly pneumatized bony areas, when he knew or should have known that the conditions of plaintiff's left ear might cause disorientation of the surgeon in approaching or operating near, at and on the areas through, in or where the facial nerve travelled in the left ear, and in failing to avoid the course of the facial nerve during the surgery".

We agree with the trial judge that the charge "in failing to avoid the course of the facial nerve" would include and permit proof of operating "in other than movements parallel to the facial nerve." The withdrawal of specification 3 did not preclude plaintiff from introducing any of her evidence and we think had no effect on the deliberations of the jury. We find no merit in this assignment of error.

We have carefully examined the other assignments of error and find no merit in any of them. The judgment is affirmed.

O'CONNELL, C. J., Specially Concurring.

Taking the medical testimony as a whole, I do not think that it can be reasonably construed to mean that the witnesses intended to say that the type of injury in question was more likely to occur as a result of the

surgeon's negligence than as a result of some other cause. The witnesses purported to say only that injury to the facial nerve does not ordinarily occur as a result of such an operation but that if it does occur, it is just as likely that it was the result of the inherent risk of that type of operation as it was the negligent conduct of the surgeon.

Drs. DeWeese and Holden, plaintiff's expert witnesses, each testified that injury of the type suffered by plaintiff was an "inherent" risk of the type of surgery performed in this case. If the risk of injury is inherent in the operation, it is difficult to see how it would be more likely to occur as a result of the surgeon's negligence than through the cause or causes which make such an injury an inherent risk of the operation.

I disagree with the analysis of the majority opinion in still another respect. The opinion limits the operation of the doctrine of res ipsa loquitur to the specific acts of negligence alleged in the complaint. I would agree that if the complaint does not apprise defendant of the plaintiff's theory, defendant is entitled to limit plaintiff's proof to the allegations in the complaint. But that involves merely a principle of pleading; it has nothing to do with the scope of the doctrine of res ipsa loquitur. The proper rule is stated in 2 Harper & James, The Law of Torts, § 19.10, p. 1097 (1956):

> "* * * Only in a case where defendant has been genuinely and justifiably misled by the pleadings so that he has actually failed to prepare a defense to a case based on the doctrine should its application be denied on the basis of the pleadings. This seems to be the general rule."

In the present case it cannot seriously be contended that defendant was not aware of plaintiff's intention

to go beyond the proof of specific acts of negligence on the part of defendant and to rely upon the inference that could be drawn under the res ipsa loquitur doctrine. Plaintiff alleged that "under the procedures customarily followed for performance of a radical mastoidectomy revision for the removal of cholesteatoma, injury and paralysis to the facial nerve and interference with the balance and equilibrium will not occur ordinarily in the absence of negligence."

The effect of specific pleading and proof in connection with the doctrine of res ipsa loquitur is thoroughly discussed in 2 Harper & James, The Law of Torts, § 19.10 (1956). What is said there clearly demonstrates the error of the reasoning used in the majority opinion.[1] To the extent that the cases relied upon by the majority are inconsistent with this analysis, they should be overruled.

I also concur with what is said in the dissenting opinion of Tongue, J.

HOLMAN, J., concurring.

I agree with that portion of the Chief Justice's concurring opinion which holds that the doctrine of res ipsa loquitur should not be applicable to a medical malpractice case where the particular injury inflicted, though seldom occurring, is an inherent risk of the operation performed. I believe the application of res

---

[1] Cf., Waterway Terminals v. P. S. Lord, 256 Or 361, 474 P2d 309 (1970). We there held that our rule precluding general allegations of negligence when there are specific allegations of negligence in the same count did not apply to res ipsa loquitur cases. Quoting from Short v. D.R.B. Logging Co., 192 Or 383, 393, 232 P2d 70, 235 P2d 340 (1951), we approved the use of a general res ipsa loquitur instruction, even when there were specific allegations of negligence, if the general allegations of negligence were properly pleaded.

ipsa in such a situation to be poor public policy. If a jury case of negligent conduct is made out in such circumstances by an unfavorable result, physicians either will not perform such operation or will do so at great risk. Neither result is desirable.

If I were to hold that the doctrine of res ipsa is applicable, as does the principal opinion in this case, I would hold, as it does, that the trial judge was not in error in refusing to give plaintiff's proffered instruction on the subject. In addition to the reasons specified in that opinion for such holding, I would add that the requested instruction was so voluminous and convoluted as to be virtually unintelligible to the average juror. The instruction was as follows:

"You are instructed that the happening of an accident, by and of itself, in the course of surgery, or that injuries occurred in surgery, or that a patient has been damaged as a result of surgery, do not of itself or themselves raise a presumption or inference of negligence against the defendant.

"You may, however, find that there arises an inference that the proximate cause of the occurrence or accident was some negligent conduct on the part of defendant, if you find from the evidence the following things:

"(1) That the accident was of a kind which ordinarily does not occur in the absence of someone's negligence,

"(2) That the accident was caused by an instrumentality or agency within the exclusive control of the defendant, or in other words that the defendant would be responsible for any negligence connected with the event, and

"(3) That the occurrence was not due to any voluntary action or contribution on the part of the plaintiff.

"I instruct you that if you find by a preponder-

ance of the evidence that the 'accident' complained of did occur and will not occur ordinarily when a surgeon has used the ordinary and standard degree of skill and care and has used the ordinary and accepted practices and procedures, the standard in both instances being, of course, that which ordinary specialists in middle ear surgery would follow, in this or similar communities, and you further find that the defendant was in exclusive control and without any voluntary action or contribution of the plaintiff, and that the injury was caused by some instrumentality within the control of defendant, then I instruct you are entitled to find an inference of negligence chargable [sic] to the defendant.

"This inference, if found, is substantial evidence, and is sufficient in the absence of more satisfactory evidence to the contrary to justify a finding of negligence against defendant.

"This instruction is what is called in the law 'res ipsa loquitur', a legal term which means generally that 'the thing speaks for itself.'

"In giving this instruction I do not infer to you that you should find there was negligence on the part of the defendant or that there should be an inference of negligence. By giving the instruction it means only that under the facts and circumstances of this case, the plaintiff has presented sufficient evidence which, if believed by you, would justify reasonable minds to infer that 'some' negligent act caused the injury or injuries during the surgery.

"Now, if there is other evidence which, if believed by you, is more pursuasive [sic] and such that it would, in your minds, over-come the inference raised, if you so find and such an inference is made by you, I instruct you such evidence would be sufficient to rebut any inference of negligence raised.

"In rebutting such inference, if any is made, the

defendant should show that he did, in fact, exercise the care and diligence required of him, or, in other words, that the occurrence came about without being caused by any failure to exercise the care, skill and diligence required of him. In making such a showing, it is not necessary for the defendants to overcome the inference by a preponderance of the evidence. Plaintiff's burden of proving negligence by a preponderance of the evidence is not changed by the rule of res ipsa loquitur. It follows, therefore, that in order to hold defendants liable on the basis of this instruction, the inference of negligence must have greater weight, more convincing force in the mind of the jury, than the opposing explanation offered by the defendants. If such a preponderance in plaintiff's favor exists, then it must be found that some negligent conduct on the part of the defendant was a proximate cause of the injury; but if such preponderance does not exist, if the evidence is more convincing in defendant's favor, or if in the jury's mind there is an even balance as between the weight of the inference and the weight of the contrary explanation, neither having the more convincing force, then your finding on this instruction must be for the defendant.

"The fact that I am instructing you on 'res ipsa loquitur' does not mean that plaintiff has or has not proved her specific allegations of negligence nor that you may not render a verdict in her favor on those specific allegations.

"Now, this instruction, that is on 'res ipsa loquitur' only applies to the alleged surgical negligence in injuring the facial nerve and to the alleged negligence in injury to the labyrinth, both of which claimed injuries were allegedly occurrences in the surgical procedures. This instruction has no application and should not be considered by you in connection with any matters involving the alleged negligent diagnosis and treatment."

If proffered instructions are no more intelligible to

the layman than the above, it is not error to refuse to give them.

TONGUE, J., dissenting.

I concur in the holding of the majority that this is a proper case for application of the doctrine of res ipsa loquitur. However, I most respectfully disagree with the holding of the majority that the trial court did not err in refusing to instruct the jury on the subject of res ipsa loquitur.

The sole reason for that holding by the majority is that the so-called "general" allegation of negligence in the complaint, upon which an instruction on res ipsa loquitur would normally have been based, had been stricken by the trial court, without objection by plaintiff, and that no assignment of error was taken by plaintiff from that ruling. On the other hand, if the majority opinion is correct in holding that this is a proper case for application of the doctrine of res ipsa loquitur, and I agree that it is, then it follows that it was error for the trial court to strike that allegation from the complaint.

In my opinion, the fact that no objection was taken or error assigned to that improper ruling should not prevent this plaintiff from an opportunity for a new trial, under proper instructions from the court, since the primary error of the trial court was its refusal to give the requested instruction on res ipsa loquitur and proper assignment of error was taken from the refusal to give that instruction. This is particularly true in this case, in my opinion, for the reason that respondent has not urged on this appeal the contention that the instruction was properly refused because of the previous striking of that allegation from the complaint and thus waived that contention on this appeal. It may

be proper to affirm a trial court for refusing to give an instruction when the instruction was defective for some reason not urged either in the trial court or by the respondent on appeal. In this case, however, the instruction requested was defective only because of the improper action of the trial judge in striking the "general" allegation of negligence from the complaint.

For these reasons I most respectfully dissent.

DENECKE, J., dissenting.

I join Justice TONGUE's dissent and further dissent for the reasons stated in Chief Justice O'CONNELL's specially concurring opinion disagreeing with the majority's decision limiting res ipsa loquitur to the specific acts of negligence alleged.