Argued September 7, 1976, reversed and remanded February 3, 1977

SELLARS, *Respondent,*
*v.*
PRESBYTERIAN INTERCOMMUNITY HOSPITAL,
*Appellant.*
(No. 73-142 L, SC 24353)
559 P2d 876

Stanley C. Jones, of Giacomini, Jones & Zamsky, Klamath Falls, argued the cause and filed briefs for appellant.

Hal F. Coe, Klamath Falls, argued the cause for respondent. With him on the brief was Alan M. Lee, of Smith & Lee, Klamath Falls.

Before Denecke, Chief Justice, and McAllister*, O'Connell**, Holman, Tongue and Bryson, Justices.

DENECKE, C. J.

---

*McAllister, J., resigned December 31, 1976.
**O'Connell, J., term expired January 3, 1977.

## DENECKE, C. J.

The plaintiff patient prevailed in this malpractice action against the defendant hospital. The hospital appeals.

The hospital contends the trial court erred in not granting its motion for a directed verdict. The basis of the motion was that the doctrine of res ipsa loquitur does not apply and without it there is insufficient evidence to submit the case to the jury.

■ As the defendant contends the evidence did not make a case for submission to the jury, we consider the evidence most favorable to plaintiff.

The plaintiff was a seriously ill, 63-year-old woman. She was taken to the hospital before noon on February 27th. During the evening of the 27th plaintiff became restless and incoherent. She tossed around in her bed. On one occasion she got out of bed and was standing on the floor beside her bed before the nurses could come to her and put her back in bed. At 4:00 a.m. on February 28th the nurse placed plaintiff in a restraining jacket. The nurses have this authority without calling the attending physician. At 4:30 plaintiff did not respond to verbal stimulus and her eyes reacted very poorly to light. At 5:00 a.m. her doctor was called. He came at 5:30 and ordered the restraints removed. At that time he noticed her right upper arm was bruised. Later in the morning the hospital took a routine chest x-ray and it was discovered that plaintiff had fractured her right upper arm. Plaintiff seeks damages because of this injury.

The evidence was that the fracture probably occurred between the time when the patient was admitted and 5:30 a.m. the next morning. There was no direct evidence of how it occurred. The experts testified that the kind of fracture plaintiff suffered is most commonly caused by falling with an arm outstretched; however, straining against restraints or normal handling of a patient could cause such a fracture.

[ 103 ]

In order for res ipsa loquitur to apply:

"* * * (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; * * *." *Brannon v. Wood,* 251 Or 349, 355, 444 P2d 558 (1968), quoting from Prosser, Law of Torts (2d ed) 201-202, § 42.

As defendant points out, requirement (2), quoted above, concerns causation; that is, did defendant's conduct cause plaintiff's injury. Prosser writes: "It would be far better, and much confusion would be avoided, if the idea of 'control' were discarded altogether, and we were to say merely that the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it." Prosser, Law of Torts (4th ed) 221, § 39.

In the present case the facts concerning these two requirements are intertwined. The most probable cause of plaintiff's injury was a fall. The trial court was of the opinion that in the absence of negligence a patient in plaintiff's condition ordinarily would not be in such circumstances that she could fall. We reach the same conclusion.

The reasoning used in reaching such a conclusion is described in *Kaufman v. Fisher,* 230 Or 626, 639-640, 371 P2d 948 (1962):

"The process of judgment involves an examination of the inventory of possible causes for an accident of the kind in question. Initially this inquiry is made by the trial judge in determining whether the case should be submitted to the jury. Upon the basis of this understanding of how accidents of the kind in question happen he decides where the probabilities lie. If he decides that the probabilities of non-negligent causes are as great or greater than the probability of a negligent cause attributable to the defendant he withdraws the case from the jury. On the other hand, if, from the same source of knowledge, he concludes that accidents of the kind in question more often than not occur because of someone's negligence (or if he is of the opinion that expert tes-

timony probably would demonstrate this proposition), he submits the case to the jury. * * *."

The plaintiff could be described as "helpless." In her distraught frame of mind the hospital could not depend upon her to care for her own safety. For a period of time she was not restrained or constantly attended. The negligence, if any, under these circumstances in all probability must be that of the hospital. No third party is involved and the hospital had a duty to protect the plaintiff against the consequences of her own actions. For these reasons the jury could find that the hospital's conduct was the probable cause of plaintiff's injury.

The trial court was correct in concluding that the doctrine of res ipsa loquitur applies.

■ Mrs. Marsh was another patient in plaintiff's room. She was dead at the time of trial. By deposition she testified that plaintiff got out of bed. The defendant attempted to prove Mrs. Marsh was testifying about an incident occurring after plaintiff fractured her arm. To adduce such proof defendant offered parts of the hospital record containing the actions and observations of a nurses' aide. Defendant contends the trial court erred in refusing to receive parts of the hospital record for Mrs. Marsh. If the trial court did err, such error is not reversible because the nurses' aide who made the relevant observations and the entries testified to the facts stated in the hospital record and refreshed her recollection from the record.

Defendant also contends the trial court erred in not permitting defendant to ask certain questions of the orthopedist called by the defendant.

In her case in chief plaintiff called her attending physician and asked him a hypothetical question. The only assumed fact in the hypothetical which concerned the hospital's action or inaction was "and that it was not until 5:00 a.m. of the following morning that the doctor in charge was called." The defendant objected to the hypothetical upon the ground that any negligence

in this regard was not a cause of plaintiff's injury. The objection was overruled. His opinion was: "I would have to say that the nurse erred in not calling the doctor sooner of the change of the condition." The plaintiff then asked whether such error caused plaintiff's injury. The trial court sustained defendant's objection. This witness testified to no other error or negligence on the part of the defendant.

Plaintiff called a registered nurse who had worked at the defendant hospital. She was asked the same hypothetical as the plaintiff's attending physician. She answered that the hospital did not meet the standard of care because it did not call plaintiff's physician until 5:00 a.m. She was not asked whether the negligence caused the injury.

Defendant called an orthopedic surgeon. The defendant asked his witness whether the fact that the nurses did not call plaintiff's physician until 5:00 a.m. caused the fracture. The trial court ruled such question was objectionable. On the offer of proof the orthopedist stated the nurses' failure to call earlier was not a cause of the fracture.

The trial court refused to permit the orthopedist to answer because it stated the nurses' action had nothing to do with the case.

■ We hold the trial court erred in refusing to admit the orthopedist's testimony.

■ The circumstances in this case were that the plaintiff was permitted to introduce expert testimony that the hospital was negligent in failing to call plaintiff's physician earlier. There was no evidence that such negligence caused plaintiff's injury; however, the jury was not instructed it could not be or was not the cause. The jury was left free to draw that inference. Under such circumstances it was error not to permit the defendant to introduce testimony that it was not the cause. The parties have not cited any authorities on this point and we have found none. However, funda-

mental fairness requires that a party be permitted to introduce evidence to rebut inferences the jury can draw from the opposing party's evidence.

We also hold the error was reversible error. Plaintiff did not allege in her complaint that the hospital was negligent in not calling her physician earlier and the jury was not instructed it could find negligence in this regard. However, the plaintiff strongly argued to the jury, over defendant's objection, that the hospital was negligent in not calling plaintiff's doctor earlier. Under these circumstances we must find the error was reversible.

Reversed and remanded.