Argued and submitted June 11, affirmed in part, reversed in part and remanded September 26, reconsideration denied November 16, petition for review allowed December 4, 1984 (298 Or 334)

# McKEE ELECTRIC COMPANY, INC. et al,
*Respondents,*

*v.*

# CARSON OIL COMPANY,
*Appellant.*

(A8108-04708; CA A29903)

688 P2d 1360

Timothy N. Brittle, Portland, argued the cause for appellant. With him on the brief was Acker, Underwood & Smith, Portland.

Richard L. Grant, Portland, argued the cause for respondents. With him on the brief were James K. Buell, and Buell, Black & DuPuy, Portland.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Rossman, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Plaintiff[1] brought this action for damages, alleging that, while in the course of delivering gasoline to an underground storage tank at plaintiff's place of business, defendant's employe negligently overfilled the tank, causing gasoline to flow under the delivery truck. The truck somehow ignited the gasoline vapor, and the resulting explosion and fire completely consumed the truck and most of plaintiff's adjacent building. At the close of plaintiff's case, and again when all the evidence was in, defendant moved for a directed verdict on the ground that plaintiff had failed to prove negligence. Defendant also moved to have each specific allegation of negligence stricken for the same reason. Four specific allegations were finally submitted to the jury, which found defendant 80 percent at fault. Defendant's first five assignments of error concern the denial of the motions.

■ ■ Our review of the errors claimed requires us to examine the facts in the light most favorable to plaintiff to determine whether there is sufficient evidence from which the jury could find that defendant was more probably than not negligent and that its negligence was a substantial factor contributing to the explosion and fire. *James v. Carnation Co.,* 278 Or 65, 67, 562 P2d 1192 (1977). Although a trial court is required to take from the jury allegations of negligence unsupported by the evidence, *see, e.g., Martin Engineering Co., Inc. v. Opton,* 277 Or 291, 295-96, 560 P2d 617 (1977), a directed verdict should be entered only in "exceptional circumstances," when the only reasonable inference from the evidence is that the defendant was not negligent or that the defendant's negligence was not a substantial factor in causing the injury. *James v. Carnation Co., supra,* 278 Or at 69.

The evidence showed that the defendant parked the truck with its front end about two feet away from the rear wall of the building. On one side, the fill pipe to the underground tank was three or four feet away; at about the same distance, on the other side, was a vent pipe. Defendant began to fill the tank by pumping gasoline from the truck at the rate of about 140 gallons per minute. The driver stood about 20 feet away from the pump controls in order to observe the vent pipe

---

[1] "Plaintiff" means McKee Electric Company, Inc.

which, on at least one other occasion, had discharged gasoline on the ground during the filling operation. After 1050 gallons had been pumped, the driver had to change to another tank on the truck. After changing to that tank, he resumed his position about 20 feet away from the controls.

When about 300 more gallons had been pumped, things started to go wrong. The engine on the truck began to race "very loud and fast." The engine speed governed the rate at which the gasoline was pumped and, as a result of the speedup, the truck began pumping about 300 gallons per minute. The engine began to race, because it was taking in gasoline vapors through the air intake. The source of those vapors is not certain, but there is evidence from which the jury could conclude that gasoline flowed from the vent pipe and spread beneath the truck.

As the driver ran to turn off the pump, he saw gasoline spewing from the fill pipe. Ten to 15 seconds elapsed before the vapors ignited. He managed to shut off the pump, but defendant's expert testified that, in his opinion, a "sizable spill" had already occurred.

The truck was the source of the spark that ignited the gasoline vapors. There was evidence that the truck could have been parked elsewhere during the fill operation, that the driver had parked the truck elsewhere during previous deliveries and that, had he done so on this particular day, the accident "very likely" would not have happened. He parked where he did so that he could pump the tanks on the truck dry rather than retaining 40 to 50 gallons. There was also evidence that he did not know how much gasoline the tank would hold and that automatic shutoff devices are not available for the size of hose on the truck.

That is ample evidence from which a jury could conclude that defendant's driver negligently overfilled the tank and in doing so spilled gasoline around the delivery truck, which was parked too close to the fill pipe. The jury could also conclude that defendant's driver was negligent in standing 20 feet away from the pump controls, thereby rendering himself unable to prevent or minimize the amount of gasoline spillage.

Defendant insists that negligence in this case can

only be shown by expert testimony. Plaintiff did not produce an expert to testify that defendant was negligent. Expert testimony is an indispensable part of a *prima facie* negligence case only if the average juror could not be expected to understand the issues involved. *Hall v. State,* 290 Or 19, 27, 619 P2d 256 (1980); *Lynd v. Rockwell Manufacturing,* 276 Or 341, 349, 554 P2d 1000 (1976). The rule applies whether or not the plaintiff is able to produce evidence of a breach of duty or relies on *res ipsa loquitur. See, e.g., Mayor v. Dowsett,* 240 Or 196, 214-18, 400 P2d 234 (1965).[2] The average juror does not need an expert to explain that it is more likely than not negligence to overfill an underground tank and cause gasoline to spill on the surface. A juror can understand, without expert testimony, that a reasonably prudent person would not park a delivery truck with the engine running where it is reasonably foreseeable that gasoline vapors will be present and that the truck would be affected by, or ignite, those vapors. Defendant's first five assignments of error fail.

■ ■ Defendant next contends that a *res ipsa loquitur* instruction should not have been given and that the instruction given was erroneous in any event. *Res ipsa loquitur* applies when there is evidence from which the jury could reasonably find that it is more probable than not that an accident would not normally have occurred in the absence of negligence and that the negligence was probably that of defendant. *See Watzig v. Tobin,* 292 Or 645, 650-51, 642 P2d 651 (1982). Neither contributory negligence, *Cramer v. Mengerhausen,* 275 Or 223, 228, 550 P2d 740 (1976); *Powell v. Moore,* 228 Or 255, 268, 364 P2d 1094 (1961), nor lack of exclusive control over the instrumentality leading to the accident precludes application of the doctrine. *Pattle v. Wildish Construction Co.,* 270 Or 792, 797, 529 P2d 924 (1974).

Defendant argues that plaintiff failed to produce any evidence that this fire was the type of accident that does not ordinarily occur in the absence of negligence, because no expert so testified. We do not agree that statements by an

---

[2] *Brannon v. Wood,* 251 Or 349, 444 P2d 558 (1968), is not to the contrary. There the court held that the injury complained of (paralysis resulting from medical procedure used to stop severe internal bleeding) was not the type of injury commonly known not to occur in the absence of negligence. 251 Or at 359. Expert testimony was required to establish the point. 251 Or at 360-61.

expert to the effect that accidents such as this ordinarily do not occur without negligence is essential to plaintiff's case. We think that common sense and ordinary experience can fairly lead to the conclusion that an accident of this kind occurs because someone was negligent. On the evidence here, moreover, the jury could find that the negligence involved was defendant's. *See St. Paul Fire & Mar. Ins. v. Watkins,* 261 Or 473, 477, 495 P2d 265 (1972). We conclude that this is not the type of case where expert testimony is necessary to help a juror understand the issues. *Compare Watzig v. Tobin, supra,* 292 Or at 652; *Mayor v. Dowsett, supra,* 240 Or at 217-18; and *Kaufman v. Fisher,* 230 Or 626, 636-41, 371 P2d 948 (1962), with *Brannon v. Wood,* 251 Or 349, 359-61, 444 P2d 558 (1968).

■ Defendant claims that the *res ipsa* instruction given was erroneous, because it was not *clearly* limited to the specific allegations of negligence pled, as it must be when a general allegation of negligence is not pled. *Brannon v. Wood, supra,* 251 Or at 356-57. The instruction is set forth in the margin;[3] it refers to "negligence on the part of defendant as alleged in plaintiff's complaint." When taken in context with other instructions given, instructions making it clear that the only allegations of negligence before the jury were the specific acts alleged in the pleadings, the *res ipsa* instruction would not have given the jury an erroneous impression of the law that affected the outcome of the case. *See Waterway Terminals Company v. P.S. Lord Mechanical Contractors,* 256 Or 361, 370, 474 P2d 309 (1970). Accordingly, we conclude that the instruction does not warrant a reversal.

■ Defendant contends that the trial court erred in striking the allegation in its answer and counterclaim that

---

[3]
"However, you may find that the defendant was at fault if you find all the four elements are proven—excuse me, all of the following four elements are proven.

"First, that the fire damage was caused by igniting spilled gasoline. Secondly, at the time of the incident, the delivery truck and discharge of gasoline was under the control or management of the defendant.

"Third, the plaintiffs' contribution to the incident did not preclude *negligence on the part of the defendant as alleged in plaintiffs' Complaint [sic]*.

"Fourth, in the normal course of events the incident would not have occurred unless the defendant was at fault." (Emphasis supplied.)

plaintiff was negligent in ordering a quantity of fuel that its tank would not hold. Uncontradicted testimony showed that plaintiff simply requested defendant to fill the tank and that neither plaintiff nor defendant knew how much fuel it would take to do so. There is no evidence that plaintiff ordered any particular quantity of fuel, and it was not error to strike the allegation.

■■■■ Defendant assigns error to the trial court's submission to the jury of plaintiff's claim for consequential damages. That claim (in paragraph X of the complaint) was for "loss of time of supervisory and regular employes utilized in the necessary cleanup, obtaining temporary office quarters, retaining security guards, locating and obtaining replacement tools, equipment, fixtures and miscellaneous."[4] Defendant argues that "loss of time" is not compensable in the absence of proof that plaintiff suffered lost earnings as a result of the lost time, citing *Jenks v. Larimer,* 268 Or 37, 518 P2d 1301 (1974). *Jenks* is not in point here, because there is no claim for lost earnings in this case. Neither is there a claim for the reasonable expenses incurred in cleaning up the premises, which defendant concedes would be a recoverable expense. *See Hanset v. General Construction Company,* 285 Or 101, 589 P2d 1117 (1979). Plaintiff produced no evidence of lost earnings, lost production time or increased costs resulting from the time lost. Its evidence consisted of records showing the amount of time spent by supervisors and employes on "fire related activities" and of testimony intended to show what portion of their regular compensation was attributable to that activity.

■■■■ As a general rule, recovery for tortious injury is intended to restore the injured party to the position it enjoyed before the injury or to compensate the injured party for its loss. *See, e.g., United Engine Parts v. Reid,* 283 Or 421, 584 P2d 275 (1978); *Carter v. Wolf Creek Hwy,* 54 Or App 569, 635 P2d 1036 (1981). Thus, when the injury is to a business, the cost of doing business is not generally recoverable, because it cannot be said that the cost is attributable to defendant's

---

[4] Defendant contends that this allegation is not broad enough to sustain plaintiffs' claims for the actual costs of the office quarters, security guards, replacement tools and miscellaneous items, but is limited to the "time lost" in obtaining those things. We find no merit in this contention, particularly because defendant did not object to the evidence introduced on each of those claims. *See* ORCP 12.

negligence; overhead is a fixed expense to the injured party both before and after the injury. *See, e.g., Pumpelly v. Reeves,* 273 Or 808, 543 P2d 682 (1975). Recovery may be had for increased costs and lost earnings or profits, *Jenks v. Larimer, supra; Cluck v. Fish,* 230 or 63, 368 P2d 626 (1962), and damages for lost production time may be recoverable, even when no loss of earnings results. *See Natl Steel Corp. v. Great Lakes Towing Co.,* 574 F2d 339 (6th Cir 1978).

However, a negligent defendant is liable for reasonably foreseeable consequential damages attributable to its negligence, and it is generally true that a defendant cannot escape that liability because the injured party is made whole by its own efforts or the efforts of others. One example of this principle is the collateral source rule. *See, e.g., Reinan v. Pacific Motor Trucking Co.,* 270 Or 208, 527 P2d 256 (1974).

The claim for "lost time" in this case brings the tension between these general rules into focus. On one hand, defendant negligently damaged plaintiff's property, thereby necessitating a cleanup operation. That operation entailed an expenditure for which defendant ordinarily would be liable, regardless of whether plaintiff was restored to its pre-injury position by its own efforts or not. On the other hand, plaintiff offered no evidence to show that it suffered increased costs, lost production time or lost earnings as a result of defendant's negligence. In other words, plaintiff failed to show that its economic position was altered in any way by defendant's negligence, except for the evidence that it "lost the time" of its employes.

Some cases have allowed a business to recover the value of employes' salaries when their services are lost due to a defendant's negligence or breach of contract. *See Convoy Co. v. Sperry Rand Corp.,* 672 F2d 781, 785-86 (9th Cir 1982); *Clements Auto Company v. Service Bureau Corporation,* 298 F Supp 115, 134 (D Minn 1969), *aff'd in relevant part,* 444 F 2d 169 (8th Cir 1971); *Union Pacific Railroad Co. v. Vale, Oregon Irrigation Dist.,* 253 F Supp 251, 260 (D Or 1966). Others have not. *See Wilson v. Marquette Electronics, Inc.,* 630 F2d 575, 585-86 (8th Cir 1980); *AES Technology Systems, Inc. v. Coherent Radiation,* 583 F2d 933, 942 (7th Cir 1978). The factor that seems to differentiate these cases is that, when recovery is allowed, the plaintiff has not only shown lost time,

but the loss of some other benefit as a result of that lost time.

We do not believe that "lost time" is necessarily equivalent to "lost benefits." Accordingly, we hold that, when a plaintiff claims damages for the lost time of its employes as a result of a defendant's negligence, the plaintiff must come forward with evidence of increased cost, lost earnings, lost production time or other lost benefits and cannot rely solely on proof of out-of-pocket expenses. *See, generally, Welch v. U.S. Bancorp,* 286 Or 673, 704-05, 596 P2d 947 (1979). By showing simply that its employes did not perform their usual duties, plaintiff failed to sustain that burden. It was therefore error to submit plaintiff's claim to the jury. The record does not permit us to determine how the jury determined its award, and it is therefore necessary to retry the issues raised under paragraph X of the complaint.

Affirmed except as to damages under paragraph X of the complaint; reversed; and remanded for a new trial limited to the damages claimed under paragraph X.