**MAINE RUBBER INTERNATIONAL,**
Plaintiff

v.

**ENVIRONMENTAL MANAGEMENT GROUP, INC., et al., Defendants**

No. CIV.02–226–P–H.

United States District Court,
D. Maine.

April 1, 2004.

Kurt E. Olafsen, Portland, ME, for Maine Rubber International, Plaintiff.

Daniel Rapaport, Sigmund D. Schultz, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for Environmental Management Group, Inc. d/b/a EMG, and Felicia Pfeffer, and David Maglietta, Defendants.

**ORDER ON DEFENDANT'S MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EVIDENCE OF ALLEGED LOST REVENUE AND LOST PROFIT DAMAGES, DEFENDANT'S MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EVIDENCE OF SPECULATIVE DAMAGES CLAIMS, AND DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S EVIDENCE OF EMPLOYEE COSTS (DOCKET ITEMS 99, 100, AND 101)**

HORNBY, District Judge.

These motions are **DENIED.**

The plaintiff's basis for seeking contractual damages seems to be that if the defendant had timely discovered the environmental problem, the plaintiff could then have taken steps to avoid business disruption in accomplishing the move it had planned. It would have been able to cure the environmental hazard or find an alternate site, yet keep its business moving in an orderly fashion. Instead, by reason of the defendant's breach, the plaintiff learned of the hazard only at the last minute and, it says, suffered business disruption (making an emergency move) that affected its bottom line. That is a legitimate damage claim to the extent the plaintiff can establish it.

The plaintiff is seeking damages in three major categories, according to its final pretrial memorandum and trial brief. The first category is out-of-pocket expenses such as engineering costs, legal fees, site plan consulting, site studies, public relations, geotechnical investigations, and design work in connection with the failed Durastone site ($211,615.51). If liability is established, these are recoverable damages IF the plaintiff can also establish that it would NOT have incurred these expenses if the defendant had discovered the environmental problem during its Phase One survey and if it was reasonable not to remediate the hazard and go forward with the Durastone site.

■ The second category is employee costs that the plaintiff incurred in paying employees who performed work on the failed purchase of and move to the Durastone property ($104,610.79). The defendant resists recovery of this component of damages on the basis that the plaintiff had to pay wages to its employees regardless and that their compensation does not demonstrate loss to the plaintiff. I would once have agreed with that position in interpreting Maine damages law (*i.e.*, that the plaintiff would have to show the value of the actual opportunity it lost by assigning the employees that way), but the First Circuit told me that I was wrong in *South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 67 (1st Cir.2000). According to that case, it is enough if the plaintiff can provide substantial evidence that employee labor was diverted from beneficial work as a result of defendant's conduct. *See id. See also McKee Elec. Co., Inc. v. Carson Oil Co.*, 70 Or.App. 1, 688 P.2d 1360, 1366 (1984) (citation omitted) (holding that "the plaintiff must come forward with evidence of increased cost, lost earnings, lost production time or other lost benefits and cannot rely solely on proof of out-of-pocket expenses"). Again, however, this recovery will depend on whether it was reasonable not to remediate the hazard and go forward with the Durastone site.

■ The third category is lost revenues (lost production, labor and overhead costs of $440,297; lost profits of $149,123 on these revenues; lost profits on materials of $196,452; and additional lost revenues of $130,000 caused by selling premium tires at lower grade prices because of inventory shortfalls attributable to the defendant). The defendant's argument against this category is that lost revenue and lost profits were not reasonably foreseeable damages contemplated by the parties at the time the parties entered into their contract. That is a question for the jury, not a matter for an *in limine* ruling as a matter of law. I am concerned, however, that these damages may overlap. Ordinarily, a plaintiff may not recover both revenue and profits, since profits derive from revenue. I cannot tell if the plaintiff is defining "revenues" more narrowly here. I am also concerned that overhead may include labor costs being sought under the second category.

■ I reject the defendant's argument that the plaintiff's damages are too speculative because the plaintiff has not shown what it would have done if the defendant had properly performed under the contract. ("Because MRI does not know and cannot prove with any degree of certainty what it would have done had EMG performed as agreed, it cannot recover damages other than for the $1,900 cost of the allegedly deficient Phase I ESA." Def.'s Mot. *in Limine* to Exclude Pl.'s Evidence of Speculative Damages Claims, at 1 (Docket Item 100).) By definition, what the plaintiff would have done if the defendant had properly performed is a hypothetical question. The plaintiff is entitled to show the jury the range of options that were reasonably open to it. The parties can then argue over which option the plaintiff would/should have selected had the defendant performed the contract. But I also reject the plaintiff's argument that "[t]he real issue is not what MRI would have done had EMG adequately performed but what losses MRI suffered because of EMG's defective assessment." Pl.'s Objection to Def.'s Mot. *in Limine* to Exclude Pl.'s Evidence of Speculative Damages Claims, at 3 (Docket Item 107). Recoverable losses cannot be separated from the question what the plaintiff would/should have done if the defendant had properly performed.

■ Finally, I am concerned that neither party is being realistic in its damage arguments. The defendant's assertion that if liability is established, the plaintiff is limited to recovering the amount it paid for the survey, $1900, is simply not persuasive. A reasonable jury is likely to conclude that the parties contemplated substantially more than that as reasonably foreseeable damages flowing from a breach. On the other hand, the plaintiff should not expect this lawsuit to make up for all the problems it confronted in the year 1998. The plaintiff did discover the environmental hazard before it completed the purchase of the Durastone site. Its damages will be limited to those it can show were caused by the delay in discovery; not all the costs and expenses associated with the substitute move to Gorham. After all, if the hazard had been discovered by the defendant on a timely basis, the plaintiff would still have been required either to pay to remediate the hazard and go forward with the Durastone purchase (or negotiate with the landowner to reduce its price), or to void the Durastone purchase and sale, find another parcel and move in any event. The costs of remediating the Durastone site may well be a mitigation measure that caps the damages available to the plaintiff, depending upon what the plaintiff knew at the time it made it made its decision to void the Durastone contract. (The plaintiff was obliged to take reasonable steps to avoid increasing the damage.). In any event, the plaintiff cannot recover for expenses it would have incurred with or without the defendant's breach. Therefore, if a move to another site was the reasonable solution to the Durastone environmental hazard, the plaintiff would have incurred expenses and costs even if the defendant had discovered and disclosed the hazard earlier. The plaintiff can only recover those *extra* costs and expenses associated with the delayed disclosure. That recovery is bound to be substantially lower than the numbers the plaintiff is advancing in its filings on the eve of trial.

**SO ORDERED.**