# CRAMER, *Appellant,*
## *v.*
# MENGERHAUSEN, *Respondents.*

550 P2d 740

 

*Gerald R. Pullen,* Portland, argued the cause and filed a brief for appellant.

*James L. Sutherland* of Frohnmayer & Deatherage, Medford, argued the cause and filed a brief for respondents.

O'CONNELL, C. J.

## O'CONNELL, C. J.

This is an action to recover damages for personal injuries suffered by plaintiff at defendants' place of business. Plaintiff appeals from a judgment entered on a verdict in favor of defendants.

Defendants Mengerhausen and Lauber are partners doing business as O. K. Tire Store, Grants Pass, Oregon. Defendant Craven was their employee. The following is plaintiff's version of the facts. Plaintiff had brought his pickup truck to defendants' tire shop to replace the back tires with recaps. To put on the replacement tires, William Craven jacked up the back of the pickup and took off the two back wheels. In this operation, Craven shoved the jack underneath the bumper, but it appeared to the plaintiff that Craven had not shoved the jack far enough under the bumper. After the two back wheels were removed, Craven went underneath the pickup to change the spare. Plaintiff did not express to Craven his belief that the jack was not properly placed under the pickup. Plaintiff testified that he refrained from informing Craven of the dangerous condition because from past experience plaintiff had learned that in such circumstances young people do not take kindly to comments about the inadequacy of their workmanship. Craven, while under the pickup, bounced the spare tire up in the air with his knees in his attempt to place the spare in the carrying rack. Plaintiff noticed that the back end of the jack eased up, and he cried out "it's going off the jack." Plaintiff knew that there were no blocks on the front wheels and that the only thing holding up the pickup was the jack. When he saw the jack moving, he went over and tried to pull it back on the jack. In this movement he grabbed the back of the right fender and pulled backwards and upwards. He estimated that 90% of his force was backwards and 10% upwards. The pickup suddenly fell to the floor, injuring plaintiff. Craven, who was still underneath the pickup, was also injured.

In explaining more specifically the mishap, plaintiff testified that the pickup had not slipped off the jack at the time he grabbed the pickup, but the back-end of the jack moved up so that the two wheels of the jack were about one inch in the air and it was teetering back and forth. Seeing this, plaintiff moved over as fast as he could and yanked the pickup back as hard as he could. Plaintiff thought that he kept the truck on the jack two or three seconds. Plaintiff stated that he knew the pickup could slip because he had seen Craven put only a small portion of the bumper under the jack.

Craven testified that after making sure the jack was properly placed, he jacked the pickup off the ground and then got underneath the pickup to make sure it was in place. He stated that he was having only normal difficulty in replacing the spare tire and was getting ready to fasten it down when he noticed the truck falling. He saw it moving forward and his first thought was to get out from under the truck. He pushed out and sideways from under the truck but the bumper caught his left shoulder, breaking the clavicle.

Plaintiff alleged that defendants negligently failed to jack up the pickup in a safe manner and that plaintiff's actions were a foreseeable attempt to rescue defendant Craven from the danger thus created. Defendants alleged that plaintiff's injuries were caused by his own contributory negligence. The jury returned a verdict in favor of defendants, finding plaintiff seventy percent (70%) negligent and defendants thirty percent (30) negligent.

 Plaintiff contends that the court erred in refusing to grant plaintiff's motion to strike defendants' allegations of plaintiff's contributory negligence. Defendants allege that plaintiff was contributorily negligent (1) in his "attempt to grab the pickup while the same was slipping"; (2) "in attempting to hold plaintiff's pickup when he knew or should have known he was incapable of doing so"; (3) "in failing to warn Wil-

liam Craven of the position of the jack on the bumper", and (4) in "pushing against the pickup and causing it to fall off the jack." Plaintiff contends that the first, second and fourth allegations were not suported by the evidence, and that the third allegation should have been stricken because plaintiff had no duty to warn Craven of the impending danger. We are of the opinion that there was evidence from which the jury could conclude that plaintiff was contributorily negligent in conducting himself as described in specifications numbered (1), (2) and (4). However, we hold that specification number (3), charging plaintiff with contributory negligence "in failing to warn William Craven of the position of the jack on the bumper," should have been stricken and that the failure to do so constitutes reversible error.

Plaintiff had no duty to warn Craven of the pending danger caused by the improper use of the jack. There is no duty to aid one in peril in the absence of some special relation between the parties which affords a justification for the creation of a duty.[1] There was no relation of such a character between plaintiff and defendants in the present case. Although the cases which hold that there is no duty to help one who is in danger involve the liability of a *defendant* who fails to act, we can see no difference in the applicability of the principle where the defendant seeks to bar recovery because the *plaintiff* fails to act. The failure to strike specification number (3) was error.

Plaintiff further assigns as error the failure to give his requested instruction on the doctrine of res ipsa loquitur. The jury returned a verdict which included a finding that plaintiff was seventy percent negligent and defendant thirty percent negligent. The verdict demonstrates that the jury drew an inference from the circumstances of the case that defendant was negligent. An instruction on the doctrine of res ipsa loquitur would tell the jury that it could draw an infer-

[1]Prosser, The Law of Torts, p. 341 (4th ed 1971).

ence of negligence from the facts of the case. Since it is demonstrable that the jury did, in fact, draw such an inference, the failure to give the instruction was not prejudicial to plaintiff.

■ Since the question of the applicability of the res ipsa doctrine will undoubtedly be raised if the case is retried upon remand, it is advisable that we dispose of that question at this time. We think that a vehicle resting upon a jack would not ordinarily slip off the jack in the absence of the negligence of the person who employed the jack. In the present case, if plaintiff had not participated in the event by attempting to prevent the truck from slipping off the jack, the res ipsa "doctrine" would clearly be applicable. Defendant argues, however, that plaintiff's participation in the event renders inapplicable the res ipsa doctrine. We have made it clear that the mere fact of the plaintiff's participation in the event does not necessarily exclude the operation of the res ipsa principle. Thus in *Powell v. Moore,* 228 Or 255, 268, 364 P2d 1094 (1961), we said:

> "* * * [E]ven where there is some evidence that plaintiff's failure to exercise care in the use of defendant's equipment was a contributing cause producing the injury, the doctrine is not excluded as a matter of law; rather the case is to be submitted to the jury with proper instructions permitting the jury to draw the inference of defendant's negligence if it finds that plaintiff by his own conduct was not responsible for causing his injury." [Citing cases.]

The same thought is expressed in Prosser, The Law of Torts, p. 225 (4th ed 1971):

> "* * * Even where the plaintiff's own contribution is left in doubt by reason of conflicting evidence, or in shared control of the situation, it is still possible to apply the principle under proper instructions to the jury."

■ In the present case the jury could reasonably find that although plaintiff participated in the event in which he was injured, his conduct was not a substantial factor in causing the truck to fall.

■ Even if the jury were to find that plaintiff was neg-

ligent and that his negligence contributed to his injury, plaintiff's negligence does not preclude the operation of the res ipsa doctrine because, under the comparative negligence system, the jury could infer from the circumstances that the defendant's negligence exceeded the plaintiff's negligence, thus permitting plaintiff to recover in spite of his contributing negligence.[2] Whenever the jury could reasonably find that the defendant's conduct was a substantial factor in causing the plaintiff's injury and that the event is of a kind which ordinarily would not occur in the absence

[2] As pointed out above, the fact that an issue of contributory negligence is raised does not preclude the application of res ipsa loquitur because the jury might find plaintiff not negligent and yet find that the accident would not normally have occurred unless defendant were negligent. Accordingly, along with the instruction on res ipsa loquitur, the jury would be instructed that if plaintiff was negligent he would be barred. The latter instruction would not properly be given under the comparative negligence doctrine because if plaintiff was found to be less than 50% negligent, he could still recover and yet the doctrine of res ipsa loquitur could be applicable, assuming that in spite of plaintiff's negligence the accident would not normally have occurred unless defendant were negligent.

Illustrative is *Turk v. H. C. Prange Co.,* 18 Wis2d 547, 119 NW2d 365 (1963). In that case plaintiff was injured in attempting to rescue her child whose galosh had caught in defendant's escalator. The court held that the accident could not have happened had the escalator been in proper adjustment, and this being true res ipsa was applicable even though there was evidence that the galosh would not have been caught if the child had been riding properly. The court also held that "in view of Wisconsin's comparative negligence statute * * * it is more logical to hold that in Wisconsin contributory negligence on the part of * * * [plaintiff] should not be an absolute bar to her reliance on *res ipsa loquitur.*" (119 NW2d at 372.) *See also* Ghiardi, Res Ipsa Loquitur in Wisconsin, 39 Marq L Rev 361, 373-374 (1956); Campbell, Recent Developments in the Law of Negligence in Wisconsin, 1955 Wis L Rev 1.

If it is just as likely that the accident in question could have happened solely because of plaintiff's conduct rather than because of defendant's conduct then, of course, the res ipsa doctrine would not apply. As explained in a case comment on *Turk v. H. C. Prange Co., supra,* in Marq L Rev 281, 283 (1963): "* * * [I]t is not necessary that every plaintiff seeking to invoke the doctrine of *res ipsa loquitur* be free of negligence, but merely that there be evidence to show that the plaintiff's contributory negligence was not the responsible cause of the accident.

"The decision in the *Turk* case does not go so far as to say that the requirement * * * [that plaintiff's conduct not contribute to the accident] need not be satisfied by a plaintiff. To invoke the aid of the doctrine, a plaintiff must still show that any negligence on his part was no more than a cause contributing to his injury, and not another equally probable, responsible cause of the accident."

of the defendant's negligence, the doctrine of res ipsa loquitur applies even though plaintiff's negligence also contributed to his injury.[3]

In the event of a retrial of this cause, plaintiff is entitled to an instruction consistent with the foregoing explanation of the operation of the res ipsa doctrine.

Error is also assigned on the ground that the trial court excluded a Safety Inspection Report of the Workmen's Compensation Board. Included in the report under the heading *"Brief Description of Accident,"* was the following comment:

"From viewing scene of acident, talking to injured, partner & Co. & equipment it is determined that=

"Mr. William Craven, an employee of Dick & Don's OK Tire Store for a period of 2 months as a tire dismount did receive injuries to his left clavical (broken) when a pickup truck fell off jack while he was under it. Mr. Craven stated that he was pushing up and down on back of truck trying to place spare tire on holder under bed of truck. He said that he pushed up and suddenly the truck was coming down. He rolled over on side and tried to slide-out on dolly he was lying on but wasn't fast enough. The truck struck shoulder and broke left clavical. Proper jack stands were available but employee was in a hurry and didn't use equipment provided.

"Mr. Craven was treated by Dr McCarthy of Grants Pass, Ore. The jack was used as an air operated bumper jack with wide adjustable place of contact with bumper (nearly full width of bumper). Base of jack is a wide steel frame. This was sitting on a smooth concrete floor that was level. It is highly possible that employee raised back of bed high enough to get under truck but not high enough to lift wheels off ground or take flex out of springs thus pressure from under truck could bounce back bumper off hooks of jack and allow body to fall."

Other notations were as follows:

*"SOURCE OF INJURY AND ACCIDENT TYPE*

"Rear section of pickup truck, fell on employee

---

[3]This is to be distinguished from a situation in which it is equally or more probable that the event occurred because of plaintiff's alleged negligent conduct *rather than* because of defendant's alleged negligent conduct.

*"UNSAFE ACTS*

"Working under a vehicle supported only by jack

*"UNSAFE CONDITIONS*

"Vehicle improperly shored

*"AGENCY OF ACCIDENT*

"Employee bounced vehicle up & down to replace spare tire under back of pickup."

The report had been made by Leonard DeHaven, a safety compliance officer of the Workmen's Compensation Board. DeHaven was called as a witness for plaintiff and testified that defendant Craven had said that "the proper jack stands were available, but he was in a hurry and didn't use the equipment provided." No hearsay objection was made to this testimony. The Safety Inspection Report was not offered in evidence at that time. After plaintiff had rested and when defendant was putting on his case, defendant Mengerhausen testified that he had talked to DeHaven when the inspection was made and that at that time DeHaven told him that although jack stands were necessary in using some kinds of jacks, they were not necessary with the type of jack used in hoisting plaintiff's vehicle. On cross-examination of Mengerhausen, the following occured:

"Q * * * Mr. Mengerhausen, what confuses me is why Mr. DeHaven would say that proper jack stands were available by employees but that he didn't use them in that situation.

"A May I see that? [The Safety Inspection Report]

"Q Especially when you showed him the jack.

"MR. DEATHERAGE: Your Honor, I would object to any testimony, this is not evidence, this exhibit, and any reference to it would be improper.

"THE COURT: That's true. The exhibit is not in evidence.

"MR. HENDERSON: I move for its introduction.

"MR. DEATHERAGE: I would object on the basis of its hearsay nature. It is no more than an investigation report, like a police officer's report.

[ 231 ]

■ ■

"MR. HENDERSON: Your Honor, it is certified by the keeper of it.

"THE COURT: Objection sustained."

Plaintiff contends that the report should have been admitted under the official records exception to the hearsay rule, ORS 43.370, and that it was reversible error to exclude it.

The test for the admissibility of official records under ORS 43.370 is stated in *Finchum v. Lyons,* 255 Or 216 at 219, 465 P2d 708 (1970):

" 'Under the exception to the hearsay rule just quoted, it is usually required that the officer either have personal knowledge of the facts of which he is under the duty to make a record or that he have the duty of ascertaining the truth of that which he does not know of his personal knowledge. Wigmore on Evidence, 3d Ed, § 1635, p. 531. * * *' "[4]

■ The portion of the report quoting Craven's statements as to the cause of the accident[5] is admissible under ORS 43.370 because DeHaven was under a duty to report Craven's statement concerning the cause of the accident and because DeHaven had personal knowledge of the fact (that Craven made this statement). Since Craven is a party to this action, his statement was also admissible as an admission.[6]

■ Other portions of the report, however, were not

---

[4] *See also, Wynn v. Sundquist,* 259 Or 125, 133, 485 P2d 1085 (1971), which further explains the rule:

"* * * [I]n order for a statement in such a report to be admissible, the person making the report must have had firsthand knowledge of the facts and the statement must be of such a nature that the person making the report, if called as a witness, could properly testify to the matters set forth in that statement. 5 Wigmore on Evidence (3d ed) 530-531, § 1635. See also McCormick on Evidence 617, § 294, and Dutton, The Official Records Exception to the Hearsay Rule in California, 6 Santa Clara Lawyer 1 at 6-7 (1965)."

[5] "He said that he pushed up and suddenly the truck was coming down. He rolled over on side and tried to slide out on dolly he was lying on but wasn't fast enough. The truck struck shoulder and broke left clavical. Proper jack stands were available but employee was in a hurry and didn't use equipment provided."

[6] *Cf.,* Jones on Evidence § 8.8, pp. 177-78 (1972).

[ 232 ]

admissible because there is no evidence that DeHaven could properly testify to his conclusion as to what happened,[7] or as to his conclusions regarding "Unsafe Acts" and "Unsafe Conditions." This inadmissible portion of the report was also offered into evidence. Plaintiff made no offer to sever this inadmissible matter from the admissible portions of the report.[8] The trial court, therefore, did not err when it excluded the report.[9]

The judgment is reversed and the cause is remanded for a new trial.

---

[7] The safety report contained the following surmise: "It is highly possible that employee raised back of bed high enough to get under truck but not high enough to lift wheels off ground or take flex out of springs thus pressure from under truck could bounce back bumper off hooks of jack and allow body to fall."

[8] *Cf., Davis v. Georgia-Pacific,* 251 Or 239, 245, 445 P2d 481 (1968).

[9] The record does not clearly indicate on what basis the report was excluded, but as we held in *North Portland Lumber Co. v. G. L. Pine Co.,* 265 Or 617, 619-620, 510 P2d 565 (1973): "[E]ven if an objection is no more than a general objection and is sustained, the trial court will not ordinarily be reversed if any valid ground existed for the exclusion of such evidence. McCormick on Evidence (2d ed 1972) 116, § 52."