WATZIG,
*Petitioner on review,*
*v.*
TOBIN et al,
*Respondents on review.*

(No. 19-221, CA 17350, SC 27686)

642 P2d 651

Raymond J. Conboy, Portland, argued the cause for petitioner on review. With him on the brief were Garry L. Kahn, and Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Larry Dawson, Portland, argued the cause and filed the brief for respondents on review.

Before Denecke, Chief Justice, and Tongue,** Lent, Linde, Peterson, and Tanzer, Justices.

PETERSON, J.

---

** Tongue, J., retired February 7, 1982.

## PETERSON, J.

This is an action to recover damages for personal injuries sustained when plaintiff's car struck defendants' Holstein cow on the coast highway near Tillamook. The jury returned a special verdict finding plaintiff to be 50 percent negligent and defendant 50 percent negligent and awarded total money damages of $10,500. Plaintiff appealed, contending, *inter alia,* (1) that the verdict was invalid because the award was solely for special damages, or at most, nominal general damages, and thus improper, and (2) that the trial court erred in refusing to give her requested instructions on res ipsa loquitur and statutory negligence. The Court of Appeals affirmed. We allowed the plaintiff's petition for review to consider the res ipsa loquitur and statutory negligence aspects of the case.

## I
## FACTS

It was after midnight. The plaintiff was driving north on highway 101 near Tillamook. She saw a cow on the side of the highway. She slowed, went around the animal, and as she did so she saw a second cow which she ran into. Both cows belonged to the defendants and had escaped from their farm.

There were three gates to the barnyard where the cows were confined. Two of the three gates were permanently secured with rope and wire, so securely that in order to open them "you just about had to have wire cutters." The third gate, through which cows had escaped in the past, had been equipped with a "cable clamp" device several months before the accident.

The defendants' daughter, Linda, a community college student who was familiar with dairy operations, was in temporary charge while her parents were visiting in Washington. Linda testified that she visually checked the gates from inside the house before going to bed at approximately 10:30, that there was a yard lamp that illuminated the area, and that she could see two of the three barnyard gates from the window of her parents' bedroom, including the gate which was not permanently wired shut. At that time the gates were closed. Her brother, Robert, testified

that he had hurriedly checked the gates in the afternoon after milking and that he again checked the gates when he returned from a party, slightly intoxicated, at 1:30 a.m. The accident occurred at about 2 a.m.

## II
## APPLICATION OF RES IPSA LOQUITUR

The Court of Appeals held that this was not an appropriate case for a res ipsa loquitur instruction, stating:

"Plaintiff also argues that this was an appropriate case for the trial court to give an instruction on res ipsa loquitur. Res ipsa would properly apply if no conclusion could be drawn from the fact a cow escaped from a pasture other than that the owner was negligent. *Mayor v. Dowsett,* 240 Or 196, 400 P2d 234 (1965); *Powell v. Moore,* 228 Or 255, 265-66, 364 P2d 1094 (1961). Cases in other jurisdictions go both ways on whether res ipsa loquitur should apply to cases involving animals on the highway. We believe the better view is that the mere presence of the animal at large is not enough to establish an inference that the owner was negligent in the manner in which he confined it, since a cow can escape from even an adequate enclosure. * * *" 50 Or App at 545.

There is nothing particularly mysterious or profound about the doctrine of res ipsa loquitur. Perhaps the labeling of the doctrine with a Latin title has served to confuse rather than enlighten. In essence, the rule that "the thing speaks for itself," res ipsa loquitur, is a rule of circumstantial evidence that allows an inference of negligence to be drawn if the accident is of a kind which ordinarily would not have occurred in the absence of the defendant's negligence, even though it is impossible to determine the specific way in which the defendant was negligent. *Kaufman v. Fisher,* 230 Or 626, 635, 371 P2d 948 (1962).

This court's most comprehensive discussion of the res ipsa loquitur doctrine appears in *Kaufman v. Fisher, supra,* in which we stated:

"* * * If the accident is of a kind which ordinarily would not have occurred in the absence of defendant's negligence, an inference is permissible that defendant was negligent in some particular, even though it is impossible to determine in what specific way defendant was negligent. Thus

it is seen that when the doctrine is applicable the jury is permitted to speculate in the sense that it may say: 'We believe that defendant must have been negligent since accidents of this kind do not ordinarily occur in the absence of negligence, but we can not point to any specific conduct, such as the failure to keep a lookout, as a basis for our inference.'" 230 Or at 635.

We specifically held that "* * * [t]o make the doctrine of res ipsa loquitur available to the plaintiff it is not necessary that he eliminate other probable causes." The test was stated as follows: "Could it have been reasonably found by the jury that the accident which occurred in this case is of a kind which more probable [sic][1] than not would not have occurred in the absence of negligence on the part of [the defendant]?" 230 Or at 638-639.

> "It is sometimes intimated that the doctrine of res ipsa loquitur does not apply unless there is something *more* than a preponderating probability of defendant's negligence, i.e., that the accident must not only 'speak' of defendant's negligence—it must 'scream' that such is the case. But, as it has been pointed out, 'Res ipsa loquitur is applied not only where the inference is compelling but far more often where it is relatively weak and barely permissible.' Prosser, Selected Topics on the Law of Torts, p. 360 (1953). * * *" (Footnotes omitted; emphasis in original.) 230 Or at 636-637.[2]

■ The Court of Appeals was not correct in stating that res ipsa loquitur would only apply if *no* conclusion could be drawn from the fact that a cow escaped from a pasture other than that the accident was caused by the defendants' negligence. In this case the operative incident is the escape of the cows. Res ipsa loquitur applies if the incident—the escape of the cows—was of a kind which does not normally occur in the absence of negligence and the negligence which caused the incident was probably that of the defendant.

In a number of earlier cases we have listed "elements" of res ipsa loquitur which must be proved. For

---

[1] To avoid future quotations of this sentence with "[sic]" added, we now declare "probable" to be "probably."

[2] *See also, Powell v. Moore*, 228 Or 255, 266, 364 P2d 1094 (1961), and cases cited therein; *Mayor v. Dowsett*, 240 Or 196, 220, 400 P2d 234 (1965); *Brannon v. Wood*, 251 Or 349, 355, 444 P2d 558 (1968); *American Village v. Stringfield Lbr.*, 269 Or 41, 43, 522 P2d 891 (1974).

example, in *Brannon v. Wood,* 251 Or 349, 355, 444 P2d 558 (1968), we stated that the elements of res ipsa loquitur are:

" ' "* * * (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. * * *" Prosser, Law of Torts (2d ed) 201-202, § 42.'* * *' "

In *Kaufman v. Fisher,* 230 Or 626, 634, 371 P2d 948 (1962), we also relied on Prosser and listed these "necessary elements of the doctrine":

" '* * * One type of circumstantial evidence, to which the courts have given the name res ipsa loquitur, arises where

" 'a.  The accident is of a kind which ordinarily does not occur in the absence of someone's negligence, and

" 'b.  The apparent cause of the accident is such that the defendant would be responsible for any negligence connected with it, and

" 'c.  The possibility of contributing conduct which would make the plaintiff responsible is eliminated.' "

In *Pattle v. Wildish Construction Co.,* 270 Or 792, 797, 529 P2d 924 (1974), we held that exclusive control is not required[3] and both *Cramer v. Mengerhausen,* 275 Or 223, 228, 550 P2d 740 (1976), and *Powell v. Moore,* 228 Or 255, 268, 364 P2d 1094 (1961), make it clear that the plaintiff's participation does not necessarily exclude the operation of res ipsa loquitur.[4]

■  If exclusive control or custody is not required, and if plaintiff's voluntary participation does not bar its application, res ipsa loquitur would seem to require nothing more than evidence from which it could be concluded that the event was of a kind which does not normally occur in

---

[3] The requirement of exclusive control does not mean that the defendant's control must have been exclusive in terms of physical possession, but only that "it must appear that the negligence of which the thing speaks is probably that of defendant and not of another." *Pattle v. Wildish Construction Co.,* 270 Or 792, 797, 529 P2d 924 (1974), citing 2 Harper and James, The Law of Torts 1085, § 1917 (1956).

[4] *Cramer v. Mengerhausen,* 275 Or 223, 229, 550 P2d 740 (1976), adds that because of the advent of comparative fault, res ipsa loquitur may apply even if plaintiff's fault contributed to the injury. *See* note, 52 U Colo L Rev 565 (1981).

the absence of negligence and that the negligence which caused the event was probably that of the defendant. Obviously, the participation of the plaintiff or others in the event or in the control of the instrumentality are relevant, but strictly speaking, the operation of res ipsa loquitur requires neither exclusive custody or control of the defendant nor absence of participation by the plaintiff.

The Court of Appeals' reliance on the fact that "a cow can escape from even an adequate enclosure," as support for its holding that res ipsa loquitur is inapplicable in such cases, is unpersuasive. The conclusion which must be drawn to render the doctrine applicable is not whether a cow *can* escape such an enclosure, but rather whether a jury could reasonably find, under the evidence, that it is more probable than not that the escape of the cows would not normally occur in the absence of negligence and that the negligence was that of the defendants. *Kaufman v. Fisher, supra,* 230 Or at 636, 639-640.[5]

---

[5] "Whether the inference of negligence is drawn from specific conduct or simply from the fact that the accident happened, the test of preponderating probabilities is the same; in either case plaintiff can get to the jury if there is a rational basis for concluding that it was more probable than not that the defendant's failure to exercise reasonable care was the cause of the accident.

"* * * * *.

"We come then to the question of whether the doctrine of res ipsa loquitur applies to the present case. Could it have been reasonably found by the jury that the accident which occurred in this case is of a kind which more probably than not would not have occurred in the absence of negligence upon the part of Fisher? That is a question which cannot be answered with any precision because we do not have statistical data on the relative probability of the negligence of drivers as a cause of this kind of accident. The determination of where the probabilities lie must, ordinarily, be made upon the basis of past experience as it is seen and appraised by the court. These are the judgments of "common sense." ' 2 Harper & James, Torts § 15.2, p. 879 (1956).

"The process of judgment involves an examination of the inventory of possible causes for an accident of the kind in question. Initially this inquiry is made by the trial judge in determining whether the case should be submitted to the jury. Upon the basis of his understanding of how accidents of the kind in question happen he decides where the probabilities lie. If he decides that the probabilities of non-negligent causes are as great or greater than the probability of a negligent cause attributable to the defendant he withdraws the case from the jury. On the other hand, if, from the same source of knowledge, he concludes that accidents of the kind in question more often than not occur because of someone's negligence (or if he is of the opinion that expert testimony probably would demonstrate this proposition), he submits the case to the jury. The conclusion thus reached by the trial judge is tentative only because the jury may conclude otherwise. Therefore, although we frequently speak in terms of our own examination of the probabilities (e.g., *Secanti*

■    This is not a situation, such as might be presented in a medical malpractice case, in which plaintiff would need expert testimony to show that accidents of this kind do not commonly happen in the absence of negligence by persons in defendants' position. *See Mayor v. Dowsett,* 240 Or 196, 217-218, 400 P2d 234 (1965). There was evidence that the cows were within the defendants' exclusive control and the jury could reasonably have concluded that the cows normally could not escape from the enclosure if the gate was securely locked. Although we do not hold that res ipsa loquitur applies to every case in which a cow escapes from an enclosed area and enters a public highway, under the facts of this case, a jury could conclude that the cows would not have escaped in the absence of negligence and that the negligence which caused their escape was that of the defendants. Res ipsa loquitur was applicable.[6]

## III
## IT WAS NOT ERROR TO FAIL
## TO GIVE THE RES IPSA LOQUITUR
## REQUESTED INSTRUCTION

The plaintiff alleged and the court submitted these allegations of negligence to the jury:

---

*v. Jones,* 223 Or 598, 606, 349 P2d 274, 277 (1960); *Eitel v. Times,* 221 Or 585, 593, 352 P2d 485 (1960)) we are simply saying that because we are of the opinion that the probability of the defendant's negligence is greater than the probability of other causes the jury is entitled to reach the same conclusion, although it is not required to do so." (Footnote omitted.) *Kaufman v. Fisher,* 230 Or 626, 636, 639-640, 371 P2d 948 (1962).

[6]   " 'In civil cases the plaintiff has the burden of proving his case by a bare preponderance of the evidence. This means that he must satisfy the triers of fact that fifty-one per cent of the probabilities are in his favor. In negligence cases he is required only to convince the jury that it is more likely that his injuries were caused by negligence than that they were not. He must do so by evidence, and not by mere speculation and conjecture; [citing cases] and where the probabilities are at best evenly balanced between negligence and its absence, [citing cases] it becomes the duty of the court to direct the jury that there is no sufficient proof. A case of res ipsa loquitur is no exception to these familiar rules. It is the plaintiff's task to make out a case from which, on the basis of experience, the jury may draw the conclusion that negligence is the most likely explanation of the accident. That conclusion is not for the court to draw, or to refuse to draw so long as there is enough to permit the jury to draw it; and even though the court would not itself infer negligence, it must still leave the question to the jury where reasonable men may differ as to the balance of probabilities.' Prosser, Selected Topics on the Law of Torts, pp. 319-320 (1954)." Quoted in *Kaufman v. Fisher,* 230 Or 626, 635, 371 P2d 948 (1962).

"A. In failing to have an adequate fence so as to form a continuous guard and defense against livestock leaving their land to go onto the public highway.

"B. In failing to inspect their fences to determine their adequacy for forming a continuous guard and defense against livestock going out onto the highway.

"C. In failing to properly maintain and repair their fences.

"D. In failing to properly secure the fence and/or gate properly so that the cow could not leave the defendants' property and go onto the public highway."

The jury, by special interrogatory, found that the defendants were "* * *at fault in one or more of the respects claimed in the plaintiff's complaint which caused damage to plaintiff."

The jury also answered another special interrogatory as follows:

"(3) What is the percent of each of the parties' negligence which caused damage to plaintiff?

"ANSWER: Defendants Tobin        50%
              Plaintiff Watzig        50%

Based upon the jury's special findings, judgment was entered for the plaintiff. Even though the plaintiff prevailed, she claims:

"Although the jury found the defendants negligent, the failure to give [res ipsa loquitur] instructions may have affected the percentages of fault assessed by the jury in this comparative negligence action. Accordingly, it is no longer possible to hold that the giving or failure to give an instruction is cured by a verdict in favor of the aggrieved party. If the instructions given or refused were likely to have affected the percentages of fault found by the jury, the verdict does not correct the error. *Beglau v. Albertus,* 272 Or 170, 187, 536 P2d 1251 (1975)."

The res ipsa loquitur doctrine is of unique, inestimable assistance to plaintiffs in situations in which the plaintiff is unable to reconstruct the specific facts. The law comes to the plaintiff's aid to permit the drawing of an inference of specific fault where there is no direct evidence of specific fault.

■     In the absence of a res ipsa loquitur instruction, the jury found that defendants were at fault in one or more

of the respects charged.[7] Having in mind the effect of res ipsa loquitur—an inference of an unspecified fault may be drawn if the accident is of a kind which ordinarily would not have occurred in the absence of the defendants' negligence—there is no way that the event at bar can be or should be treated any longer as an "unexplained" event. The jury found that the defendants·were at fault in one or more of the specific respects alleged in the complaint. The mere existence of the event could not have given rise to a finding of greater fault. The plaintiff was not prejudiced by the failure to give the requested instruction. This statement from *Cramer v. Mengerhausen,* 275 Or 223, 227-228, 550 P2d 740 (1976), is in point:

"\* \* \* The verdict demonstrates that the jury drew an inference from the circumstances of the case that defendant was negligent. An instruction on the doctrine of res ipsa loquitur would tell the jury that it could draw an inference of negligence from the facts of the case. Since it is demonstrable that the jury did, in fact, draw such an inference, the failure to give the instruction was not prejudicial to plaintiff."

*Beglau v. Albertus,* 272 Or 170, 536 P2d 1251 (1975), cited by the plaintiff, is distinguishable. There, the trial judge failed to instruct the jury upon the application of a statutory requirement for headlights. Judgment was entered for the defendant following a jury verdict assessing defendant's fault at 36 percent and plaintiff's fault at 64 percent. The trial court set aside the judgment for defendant and ordered a new trial. We *affirmed* because "\* \* \* we ordinarily accord considerable latitude to the trial court in its determination whether such an error was prejudicial \* \* \*." 272 Or at 187. We did not *reverse* the trial court because of the failure to give the requested instruction.

■　　The plaintiff also requested that the court instruct the jury as follows:

"You are instructed that the presence of the cow of the defendants on the highway is sufficient to raise a permissible inference of negligence on the part of the defendants. The burden is upon the defendants to go forward with any

---

[7] *Compare Brannon v. Wood,* 251 Or 349, 356-357, 444 P2d 558 (1968), which held that where only specific acts of negligence are charged, a res ipsa loquitur instruction must be limited to the specific acts of negligence alleged. *But see* and compare *Dacus v. Miller,* 257 Or 337, 479 P2d 229 (1971).

evidence they might have in explanation of the presence of their cow on the highway, and to establish that they exercised ordinary and reasonable care under the circumstances to prevent the cow from getting on the highway."

The trial court did not err in failing to give this instruction. Although the first sentence of the requested instruction may be relevant to a proper res ipsa loquitur instruction, the remainder of the instruction is incorrect because res ipsa loquitur creates only a permissible inference and shifts neither the burden of proof nor the burden of going forward. *See Powell v. Moore,* 228 Or 255, 268, 364 P2d 1094 (1961), and *Ritchie v. Thomas,* 190 Or 95, 112, 224 P2d 543 (1950). *See also,* former ORS 41.320, repealed, Or Laws 1981, ch 892; and Rule 307, Oregon Evidence Code. No error resulted from the trial court's failure to give either a res ipsa loquitur instruction or the requested instruction set forth above.[8]

## IV
## APPLICATION OF ORS 607.510

The accident occurred on a section of the coast highway which is governed by ORS 607.510, which provides:
"No person shall allow cattle, horses, mules, sheep, goats, swine or other livestock of any kind, to run at large, be pastured, staked or tethered upon the following state highways:
"(1) That part of the Oregon coast highway, state highway No. 9, extending from the north boundary of Tillamook County to the south boundary of Lane County.
"* * * * *."

Violation of ORS 607.510 is punishable as a misdemeanor. ORS 607.992.

---

[8] The plaintiff also asserts that the requested instruction set forth in the text was relevant to her statutory negligence claim. As discussed in part IV of the opinion, the mere presence of the cows on the highway does not, of itself, show a violation of the applicable statute, ORS 607.510. Therefore, the requested instruction was not applicable to the claimed violation of the statute.

The res ipsa loquitur instruction requested by the plaintiff but not included in the text of the opinion contained language to the effect that "* * * the fact that there was an injury to plaintiff is no indication that anyone was at fault." The instruction, drawn from Uniform Instruction No. 22.00, would have been better without that phrase. In view of that, and in light of the foregoing discussion of res ipsa loquitur, the form of Uniform Instruction No. 22.00 may be questionable.

The plaintiff asserts that the trial court should have given the following instruction:

"You are instructed that the injury to plaintiff occurred within the area designated by this statute.

"The evidence in this case shows that the defendants' cow was upon the highway at the time of the plaintiff's injury. This fact indicates a violation of the statute I have just read to you. You are instructed that if a party is in violation of this statute, such party is negligent as a matter of law unless such party introduces evidence from which you conclude that the party was acting as a reasonably prudent person under the circumstances. In other words, the defendants would have the burden of proving that there was an excuse for violating the statute, and that such excuse is reasonable."

The effect of this instruction would be to instruct the jury to find the defendants at fault from the presence of their cattle on a highway unless they proved that they had an excuse for violating the statute and that the excuse was "reasonable."

Although ORS 607.510 is not a part of the Oregon Criminal Code, provisions of the Oregon Criminal Code nonetheless relate to its application. ORS 161.035(2) provides that unless otherwise provided, or unless the context otherwise requires, the provisions of the Criminal Code of 1971 govern the construction and punishment of any offense outside the Criminal Code.

ORS 161.095(2) provides:

"(2) Except as provided in ORS 161.105, a person is not guilty of an offense unless he acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

ORS 161.105(1)(b) provides:

"(1) Notwithstanding ORS 161.095, a culpable mental state is not required if:

"* * * * *.

"(b) An offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof."

As stated above, ORS 607.510 is "an offense defined by a statute outside the Oregon Criminal Code." In

construing ORS 607.510, our first inquiry must be whether ORS 607.510 "*\*\* *clearly* indicates a legislative intent to dispense with any culpable mental state requirement * * *." ORS 161.105(1)(b). "Culpable mental state" is defined in ORS 161.085(6) as follows:

> " 'Culpable mental state' means intentionally, knowingly, recklessly or with criminal negligence as these terms are defined in subsections (7), (8), (9) and (10) of this section."[9]

*Parker v. Reter*, 234 Or 544, 383 P2d 93 (1963), although decided before the enactment of the Criminal Code in 1971, is relevant to whether ORS 607.510 "* * * clearly indicates a legislative intent to dispense with any culpable mental state requirement * * *." ORS 161.105(1)(b). *Parker v. Reter* involved a statute which is similar to ORS 607.510. There, as here, the defendant raised cattle on a ranch near a public highway. The applicable statute was ORS 607.045(1), which provided:

> "(1) No person owning or having the custody, possession or control of an animal of a class of livestock shall permit the animal to run at large or to be herded, pastured or to go upon the land of another in a livestock district in

---

[9] ORS 161.085 provides:

"* * * * *.

"(7) 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described.

"(8) 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that his conduct is of a nature so described or that a circumstance so described exists.

"(9) 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

"(10) 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

which it is unlawful for such class of livestock to be permitted to run at large."

In *Parker,* the plaintiff's automobile collided with two cows which had escaped from the defendant's barn and went upon the adjoining highway. The trial court instructed the jury that the defendant was negligent as a matter of law. On the appeal, we construed the statute to extend to cattle running upon a highway and held that the statute was not violated unless the owner was at least negligent in permitting livestock to run at large. 234 Or at 549. Quoting from *Lemery v. Leonard,* 99 Or 670, 678-679, 196 P 376 (1921), we stated:

" "* * * The precedents cited by the plaintiff ignore the fundamental reason of the definition of "running at large." In most instances they depend upon the attendant principle that one cannot be said to have permitted a thing of which he has no knowledge or means of knowledge, so, that, if his animals escape from his inclosure without his knowledge or negligence, he does not come within the prohibitions of the statute against "permitting" his stock to be at large. *To "permit" means to allow by tacit consent or by not hindering, taking no steps to prevent, or to grant leave by express consent or authorization:* Holly & Co., v. Simmons, 38 Tex. Civ. App. 124 (85 S. W. 325).' " (Emphasis added.)

■ The verb "allow," as used in ORS 607.510, has essentially the same meaning as the verb "permit," as used in ORS 607.045(1). Therefore, the words of ORS 607.510— "No person shall allow cattle * * * to run at large, be pastured, staked or tethered * * *"—do not "* * * clearly indicate a legislative intent to dispense with any culpable mental state requirement." On the contrary, these words, our holding in *Parker v. Reter, supra,* and ORS 161.095(2) and ORS 161.105(1) compel the conclusion that one of the culpable mental states defined in ORS 161.085 must be proved.

■ The plaintiff's requested instruction is inconsistent with the requirement that at least criminal negligence must be shown before the statute would be violated. Therefore, the trial court properly refused to give the requested instruction.

The plaintiff also contends that the trial court erred in receiving the verdict over the plaintiff's assertion of jury misconduct and in its instruction on lookout. We concur with the Court of Appeals' discussion and resolution of these issues, 50 Or App at 541-542, 545-546, and will not otherwise discuss them herein.

Affirmed.