NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4735-17T3

KATHLEEN PANNUCCI,

 Plaintiff-Appellant,

v.

EDGEWOOD PARK SENIOR
HOUSING – PHASE 1, LLC;
CONIFER REALTY, LLC;
CONIFER VILLAGE AT
MIDDLETOWN 1 and
THYSSENKRUPP ELEVATOR
CORPORATION,

 Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

November 30, 2020

APPELLATE DIVISION

Argued October 29, 2019 – Decided November 30, 2020

Before Judges Ostrer, Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-4098-15.

Thaddeus P. Mikulski, Jr., argued the cause for appellant.

Walter F. Kawalec, III, argued the cause for respondents Edgewood Park Senior Housing Phase 1, LLC d/b/a Conifer Village at Middletown 1 and Conifer Realty, LLC (Marshall Dennehey Warner

Coleman & Goggin, attorneys; Walter J. Klekotka and Walter F. Kawalec, III, on the briefs).

Nancy A. Nolan argued the cause for respondent Thyssenkrupp Elevator Corporation (Shimberg & Friel, PC, attorneys; Nancy A. Nolan, of counsel; Jennifer Neilio, on the briefs).

The opinion of the court was delivered by

OSTRER, J.A.D.

Kathleen Pannucci was injured while boarding an elevator in her apartment building. She sued her landlord, its manager, and the company that serviced the elevator. For lack of proof of negligence, the court later dismissed her suit on defendants' motion for summary judgment. To salvage her claims, Pannucci asks us to revise the settled doctrine of res ipsa loquitur — "the thing speaks for itself."

The doctrine permits a jury to infer a defendant's negligence, enabling a plaintiff to make a prima facie case. McDaid v. Aztec W. Condo. Ass'n, 234 N.J. 130, 142–43 (2018). To employ the doctrine, a personal-injury plaintiff must show three things: first, the accident was one that "ordinarily bespeaks negligence," that is, someone's negligence more likely than not caused the accident; second, the defendant exclusively controlled the thing that caused the injury; and third, the injury did not result from the plaintiff's "own voluntary act or neglect." 234 N.J. at 142-43.

Pannucci urges us to jettison the third requirement. She claims that it defeats the purpose of the Comparative Negligence Act, N.J.S.A. 2A:15–5.1 to –5.8, which discarded the rule that a personal-injury plaintiff must be free of contributory negligence. See N.J.S.A. 2A:15–5.1.

We decline Pannucci's invitation. We acknowledge that other states have gone where she asks us to go. Yet, altering the res ipsa loquitur doctrine's third prong would undo settled Supreme Court precedent, and there is no hint that the Court would endorse the change. Furthermore, there is still good reason to require a plaintiff to show that his or her conduct is not an alternative explanation for the accident. Absent that showing, it may be unreasonable to infer that a defendant probably acted negligently. Because Pannucci failed to satisfy the res ipsa loquitur rule's third prong, we affirm summary judgment.

I.

Viewed in a light most favorable to plaintiff as the non-movant, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995), the record discloses these facts. Pannucci lived in an apartment building for seniors that Edgewood Park Senior Housing Phase 1, LLC, owned, and Conifer Realty, LLC,

managed.[1]  Conifer hired Thyssenkrupp Elevator Corp. to service the building's elevators.  One morning, Pannucci approached the elevator after walking her twenty-pound Pomeranian dog, Luke.  As she approached, the elevator doors opened and a man exited.  While the man was still exiting, Luke ran in, four feet ahead of Pannucci.  The elevator doors had already closed six inches when Pannucci's right arm, which was holding the leash, extended into the cab.  The right door continued to close, striking Pannucci's right arm and tearing her skin, as she pushed her left hand and the left side of her body against the closing left door.  She slowed the doors long enough to throw herself onto the elevator, but not before the doors injured her left shoulder, left side, back, neck, and right arm.

Before the accident, Pannucci had never experienced a problem with the elevator.  Furthermore, biannual state inspections of the elevator before and after the incident uncovered no operating failures.  And neither the building superintendent nor the community manager had noticed any problem with the elevator.

Thyssenkrupp serviced the elevator regularly.  The employee assigned to Conifer inspected the elevator just four weeks before it injured plaintiff.  He testified that he observed no problems with the elevator doors during his visits.

---

[1]  We will refer to both LLCs as "Conifer."

Plaintiff's expert challenged the employee's testimony, contending that the employee failed to test the "door close force and door close kinetic energy." He based this claim on an unchecked box in the maintenance record, and on one part of the employee's deposition testimony. The employee initially testified that an unchecked box meant an unperformed task. However, he later clarified that he observed all the elevator's operations, but he only checked boxes if he had to adjust or repair something.

At the summary judgment hearing, plaintiff argued that her case could proceed based on res ipsa loquitur. The court rejected that argument. The court did find that the accident was "one which may bespeak negligence," and that Thyssenkrupp had exclusive control of the elevator. But the court also found that plaintiff failed to meet the doctrine's third requirement. One could reasonably infer that plaintiff negligently caused her own injuries by keeping her dog on such a long leash, and forcibly stopping the elevator doors.

The court granted Conifer summary judgment because plaintiff failed to satisfy the res ipsa doctrine's preconditions; plaintiff's expert did not identify negligence by Conifer; and plaintiff presented no evidence that Conifer had noticed the elevator was malfunctioning. The court later granted Thyssenkrupp summary judgment based on the court's earlier res ipsa loquitur

5

ruling, and because the court held that plaintiff's expert offered a net opinion after the expert failed to appear at an N.J.R.E. 104 hearing.

II.

In her initial appellate brief, plaintiff argued that the Court's intervening decision in McDaid warranted reversal of summary judgment. In McDaid, the Court held that the res ipsa doctrine "applies to an allegedly malfunctioning elevator door that causes injury to a passenger." 234 N.J. at 141, 147. In that case, an elevator door struck a woman who was using a walker. The door knocked the plaintiff down, and then struck her again. Id. at 137.

The woman had previously complained that the doors closed too fast. Id. at 136–37. And, a post-accident inspection found a problem with the elevator's electric eye, which was designed to prevent the doors from closing on objects it detected in the doors' path. Id. at 137. Noting that "automatic doors are not supposed to close on and seriously injure a passenger who enters or exits an elevator," the Court held that it "bespeaks negligence" when they do. Id. at 143, 147–48. However, the Court expressly limited its holding to the first prong of the res ipsa loquitur test. Id. at 143.

In their responding briefs, Conifer and Thyssenkrupp argued that McDaid's limited holding did not help plaintiff, because the res ipsa loquitur doctrine's third prong — which was not at issue in McDaid — still doomed

plaintiff's claim. Conifer did not address the second prong, and Thyssenkrupp did not challenge the court's finding that it exclusively controlled the elevator.

In her reply brief, plaintiff argued for the first time that we should discard the third prong because it defeats the purpose of the Comparative Negligence Act. And in a footnote in her reply brief, plaintiff stated that she did not address the second prong because Conifer did not "seriously argue" that defendants lacked exclusive control of the elevator.

III.

We are not obliged to address plaintiff's newly-minted argument that we should discard the res ipsa loquitur doctrine's third prong. Plaintiff failed to present the issue to the trial court. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (stating that appellate court generally need not address issues not properly presented to the trial court). And she did not even present the issue in her initial appellate brief; she improperly saved it for her reply. See State v. Smith, 55 N.J. 476, 488 (1970) (stating that it is improper to raise new issues in a reply brief).

However, we address the issue because of its public importance. See Nieder, 62 N.J. at 234 (stating that a court may address an issue not raised below if it is of "great public interest"); State v. Federico, 414 N.J. Super. 321, 328 n.5 (App. Div. 2010) (choosing to address an issue in a reply brief "given

7

the importance of the issue"); Borough of Keyport v. Maropakis, 332 N.J. Super. 210, 216 (App. Div. 2000) (considering legal issue of general application initially raised in reply brief). After all, the record is sufficient, the issue is a legal one presented for our de novo review, and defendants addressed the merits in a sur-reply. See Henry v. N.J. Dep't of Hum. Servs., 204 N.J. 320, 330 (2010) (stating that an appellate court reviews a summary judgment order de novo); Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 230–31 (1998) (considering issue not raised before trial court where relevant record was complete and issue was fully briefed); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (stating that court reviews legal issue de novo).

Without citing any New Jersey authority questioning, let alone dispensing with, the third prong, plaintiff cites the holdings of several other courts that have found the third prong incompatible with their states' comparative negligence statutes. See Montgomery Elevator Co. v. Gordon, 619 P.2d 66, 70 (Colo. 1980) (stating that requiring plaintiff be "free from contributory negligence or other responsibilities . . . would effectively erect a complete bar to recovery" and "would be in direct contravention to the concept of comparative negligence"); Giles v. City of New Haven, 636 A.2d 1335, 1341–42 (Conn. 1994) (stating that continuing "to require a plaintiff to be free

from contributory negligence" for res ipsa loquitur purposes would violate the "manifest legislative purpose" of the comparative negligence statute, and that instead, jury should compare parties' negligence); Dyback v. Weber, 500 N.E.2d 8, 12 (Ill. 1986) (stating that, applying comparative fault principles, "a plaintiff relying on the res ipsa loquitur doctrine" need not "prove freedom from contributory negligence"); Tipton v. Texaco, Inc., 712 P.2d 1351, 1359 (N.M. 1985) (citing Montgomery Elevator and holding that "the mere existence of concurrent negligence does not preclude a particular finding of" defendants' negligence under res ipsa loquitur); Cyr v. Green Mountain Power Corp., 485 A.2d 1265, 1268 (Vt. 1984) (stating that, under Vermont's comparative negligence statute, a jury must be allowed to compare parties' negligence if plaintiff presents evidence otherwise satisfying the res ipsa loquitur doctrine); Turk v. H.C. Prange Co., 119 N.W.2d 365, 372 (Wis. 1963) (holding that "freedom from contributory negligence is not a requirement for the application of res ipsa loquitur," where the plaintiff alleged a department store negligently failed to adjust the tread and comb of an escalator that caught a child's galosh).[2]

---

[2]  Plaintiff also cited Watzig v. Tobin, 642 P.2d 651, 654–65 (Or. 1982), which did not directly rely on comparative negligence statutes, but did hold that a "plaintiff's participation does necessarily exclude the operation of res ipsa loquitur," id. at 655, where the plaintiff drove into a cow that escaped a farm.

Some of these out-of-state cases involve persons battling malfunctioning elevators. See Montgomery Elevator, 619 P.2d at 68 (after elevator doors malfunctioned and left only a narrow opening, one passenger was able to separate the doors to exit; but when plaintiff tried to follow, the door pinned and injured her); Giles, 636 A.2d at 1337 (a fearful plaintiff, who had already struck her head when the malfunctioning elevator jolted, jumped from the stopped cab, further injuring herself).

A leading treatise agrees with the reasoning of these cases, stating, "[T]he advent of comparative fault should logically eliminate this [freedom from negligence] from the doctrine, unless the plaintiff's negligence would appear to be the sole proximate cause of the event." Prosser and Keeton on Torts § 39 (Keeton ed., 5th ed. 1984).

Although this authority is impressive, we decline to follow it for two reasons. First, plausible grounds for the third prong remain. Second and more importantly, it is not for us to disturb settled precedent absent a signal from the Supreme Court that it would do so.

---

The Oregon court previously relied on the "comparative negligence system" to permit a plaintiff to recover under the res ipsa doctrine "in spite of his contributing negligence." Cramer v. Mengerhausen, 550 P.2d 740, 744 (Or. 1976).

A-4735-17T3

The Restatement (Third) of Torts: Liab. for Physical & Emotional Harm, § 17, cmt. h (Am. Law Inst. 2010) (Third Restatement) recognizes that "[a] number of modern courts, noting that contributory negligence is no longer a full defense, have ruled that this prerequisite is no longer appropriate" in applying res ipsa loquitur. However, the Third Restatement concludes that a plaintiff's contribution is still relevant in determining whether the doctrine should apply. "Properly understood, the doctrine concerning plaintiff contribution has a narrow scope, yet survives the shift to comparative responsibility." Ibid.[3]

The res ipsa loquitur doctrine is an evidentiary principle. It allows a factfinder to infer a defendant's negligence from the facts of a particular accident. However, it may be unreasonable to draw that inference if a plaintiff's actions provide an alternative explanation for the accident.

---

[3] Section 17 of the Third Restatement describes the doctrine as follows: "The factfinder may infer that the defendant has been negligent when the accident causing the plaintiff's harm is a type of accident that ordinarily happens as a result of the negligence of a class of actors of which the defendant is the relevant member." By contrast, the Restatement (Second) of Torts, § 328D(1) (Am. Law Inst. 1965) requires a plaintiff to prove that his or her conduct did not contribute to the accident, stating that the doctrine applies if "(a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff."

The Third Restatement compares two factual scenarios to make this

point. In the first, the plaintiff's negligence offers no explanation, and the

Third Restatement suggests there should be no bar to using the doctrine.

> [C]onsider the motorist who parks a car at the top of
> an incline; a minute later, the car rolls down the
> incline and runs into a pedestrian, who at the time is
> carelessly not paying attention. . . . [T]he plaintiff's
> carelessness – even though it has contributed to the
> accident – in no way diminishes the res ipsa loquitur
> idea that the car probably rolled because of the
> motorist's negligence. Hence res ipsa applies, despite
> the plaintiff's contribution.
>
> [Ibid.]

In the second scenario, the Third Restatement suggests that a plaintiff's act of

negligence should bar the use of the doctrine.

> By contrast, consider the case in which a hotel guest,
> while taking a shower, is scalded by extremely hot
> water. In such a case, the plaintiff, in order to
> establish that the scalding probably happened because
> of the negligence of the hotel, needs to prove that
> nothing in the plaintiff's own conduct explains how
> the incident occurred. In cases fitting this pattern – in
> which plaintiff contribution as an explanation for what
> went wrong is an alternative to defendant negligence –
> there is merit in the plaintiff-contribution doctrine,
> and the doctrine should be applied without regard to
> the jurisdiction's acceptance of comparative
> responsibility. In this type of case, excluding plaintiff
> contribution is merely a specific aspect of establishing
> that defendant's negligence is the most probable cause
> of the accident.

[Ibid.][4]

We acknowledge that even under the Third Restatement's nuanced approach, the third prong must be tailored to fit only cases in which a "plaintiff's conduct is in fact an alternative to defendant negligence as an explanation for what went wrong." Id. § 17 cmt. h, note.

However, as recently as its decision in McDaid, our Supreme Court has included the third prong without amendment as a precondition for inferring negligence. 234 N.J. at 143. Although the Court incorporated the third prong of the res ipsa loquitur standard long before the 1973 adoption of the Comparative Negligence Act, see, e.g., Bornstein ex rel. Bornstein v. Metro. Bottling Co., 26 N.J. 263, 269 (1958), it has survived without a hint of uncertainty in the years following, see, e.g., Jerista v. Murray, 185 N.J. 175,

---

[4] The Third Restatement based the scalded hotel-guest example on Malvicini v. Stratfield Motor Hotel, Inc., 538 A.2d 690 (Conn. 1988). See Third Restatement, § 17 cmt. h, note. Malvicini affirmed the trial court's refusal to instruct the jury on res ipsa loquitur. However, the court relied not on the third prong, which defendant did not contest, but on the second, holding that the plaintiff could not demonstrate the defendant's exclusive control. Malvicini, 538 A.2d at 693. The court stated that the second prong was intended "to exclude the possibility of an intervening act of the plaintiff or a third party which causes or contributes to . . . the accident." Ibid. We take no position on whether a scalded New Jersey hotel guest would be barred from a res-ipsa-based claim, particularly since New Jersey regulations set maximum water temperatures to protect guests against their own carelessness in regulating hot and cold water. See N.J.S.A. 5:10-15.3.

192 (2005); Szalontai v. Yazbo's Sports Café, 183 N.J. 386, 401 (2005); Brown v. Racquet Club, 95 N.J. 280, 288 (1984); Buckelew v. Grossbard, 87 N.J. 512, 525 (1981).[5]

Judges on an intermediate appellate court are not bystanders in the development of the common law. "As judges in a system rooted in the common law, we have an independent obligation, where circumstances require, to fill lacunae in the law . . . ." A.N. ex rel. S.N. v. S.M. ex rel. S.M., 333 N.J. Super. 566, 579–80 (App. Div. 2000) (Kestin, J., concurring). However, plaintiff does not ask us to fill a gap in the law; she asks us to change the law the Supreme Court has established. That, we may not do. State v. Steffanelli, 133 N.J. Super. 512, 514 (App. Div. 1975). It is not our role "to alter a rule solidly supported by the courts of last resort," Orlik v. De Almeida, 45 N.J. Super. 403, 409 (App. Div. 1957), or "to engraft . . . an exception that was not expressed" in the Court's own statement of a rule, State v. Rodriguez, 459 N.J. Super. 13, 25 (App. Div. 2019). Absent "significant

---

[5] By contrast, the Court has acknowledged the view that the exclusive control requirement should be modified to require a plaintiff to show that "the apparent cause of the accident [is] such that the defendant would be responsible for any negligence connected with it." Brown, 95 N.J. at 290 (quoting Bornstein, 26 N.J. at 276 (Francis, J., concurring) (quoting Prosser on Torts 205, 206 (2d ed. 1955))).

precedent to suggest that the Court" is prepared to alter a settled rule of law, we shall not do so in its place. See State v. Colon, 374 N.J. Super. 199, 216 (App. Div. 2005).

IV.

We briefly address plaintiff's argument that it met the second prong as it relates to Conifer. A landlord may not delegate its duty to exercise reasonable care for its tenants' safety, even if it "contracts for maintenance of an elevator." Rosenberg, 366 N.J. Super. at 303. Furthermore, "a group approach to res ipsa loquitur is supportable" in cases where "two parties . . . share responsibility for a dangerous activity." Third Restatement at § 17 cmt. f. In particular, if one party owns and controls a building, and a second party sold and exclusively services the elevator in that building, "res ipsa loquitur warrants findings of negligence on the part of both parties" if the elevator malfunctions. Ibid.

However, plaintiff raised the point not just in her reply brief, but in a footnote. That is improper. See State v. Mays, 321 N.J. Super. 619, 636 (App. Div. 1999). Plaintiff was not entitled to rely on Conifer's silence on the subject in its opposition brief, when plaintiff failed to mention it in her initial brief. Nor was Conifer obliged to address the issue in its sur-reply, given plaintiff's improper presentation of the claim in the reply brief. Under these

A-4735-17T3

circumstances, it would be unfair to reach the issue of whether plaintiff met the exclusive control prong as to Conifer.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION